## The Frey-Sheckler Company v. The Iowa Brick Company, Appellant.

**Contracts:** ACCEPTANCE: *Sale on refusal.* The refusal of a party to a contract for the construction and installment of a brick-making plant to allow the other party to remove it, in accordance with a provision of the contract to that effect, if it is proved unsatisfactory after the test contemplated by the contract, constitutes an acceptance thereof, and a subsequent direction for its removal is ineffectual to defeat an action for the purchase price.

Same. A corporation cannot avoid liability for the contract price of a brick-making plant installed on its property under an agreement by the other party to remove it and cancel all obligations against the corporation, if it proves unsatisfactory, where it appropriates to its own use the material of which the plant is composed.

Inconsistent claims. The appropriation to defendant's use of machinery sold on approval, after an expression of dissatisfaction therewith, was inconsistent with defendant's claim that the title to such property never passed under such contract, and rendered it liable for the price thereof.

**Principal and Agent:** CORPORATION. The power conferred upon an officer of a corporation to object to a plant constructed for the corporation if he is not satisfied therewith, necessarily includes the power to accept, if he is satisfied.

**Fixtures:** REAL AND CHATTEL PROPERTY: *Contracts.* Machinery of such character that, when installed in a building prepared for it, it would become a part of such structure, remained a chattel until accepted by the purchaser, where sold on approval.

*Appeal from Polk District Court.*—Hon. T. F. Stevenson, Judge.

### Wednesday, January 26, 1898.

Action in equity to establish and enforce a mechanic's lien. There was a decree below for plaintiff.

Defendant appeals.    The facts will be found in the opinion.—*Affirmed.*

*Gatch, Connor & Weaver* for appellant.

*Wesley Martin* and *George W. Seevers* for appellee.

WATERMAN, J.—The plaintiff corporation agreed to make, and place in the brickmaking plant of defendant, at Des Moines, what is called a "Bucyrus dryer,"—a somewhat complicated machine, consisting of steam pipes, valves, tracks, and cars, and which, when set up in the building that was erected by defendant, was so attached and connected with it as to become a part of the structure. The material provisions of the contract between the parties are as follows: "Bucyrus, Ohio, U. S. A., Feb. 23, 1892. Iowa Brick-Paving Company, Des Moines, Iowa—Gentlemen: We propose to construct a Bucyrus dryer, in fifteen tunnels, capable of accommodating ten cars each, each car capable of carrying five hundred green brick, of standard size, or, in other words, a dry house capable of holding seventy-five thousand brick at one filling. You are to furnish the building  *  *  *  Said dryer is capable of drying standard size green brick in from twenty-four to thirty-six hours, according to the character and condition of the clay, and the effect of heat upon the quality of the product. It will contain at one filling seventy-five thousand standard size green brick, for which the price is eighty-five dollars per thousand; total six thousand three hundred and seventy-five dollars. Our representatives will dry for you two turns of brick, and afterwards you shall have the privilege of using it for thirty days; and if, at the end of that time, it is not satisfactory to you, we will remove our property, and cancel all obligations held against you on account of the dry house." This offer was signed by plaintiff, and accepted

by defendant. The dryer was duly constructed in a building provided for it by defendant. But defendant claims that, after three trials made under the supervision of plaintiff's agents, it developed that said dryer would not do the work agreed; that defendant was not satisfied with it, and refused to accept it, and is therefore not liable in any sum to plaintiff.

A great many of the legal propositions argued by counsel can be disposed of by two findings of fact, which, when considered in connection with an allegation of defendant's answer are decisive of the case. Walker, the president of the defendant company, being dissatisfied with the work of the dryer, testifies that at one time he told Batley, the agent of plaintiff, to remove it from defendant's premises. This is denied by Batley. But, admitting the fact to be so, the time when this was said is not fixed definitely or clearly, further than that it was prior to the occurrence of which we are about to speak. Immediately after the third trial of the dryer, which was had by mutual consent, when Jackson, the defendant's secretary and general manager, expressed dissatisfaction with the result of its work, Batley told him, in effect, that plaintiff must have the dryer, or its price; and the answer he received from Jackson was, in substance, that it could have neither. Appellant asserts that Jackson had no authority to speak for defendant, or to bind it by -anything he might say. This contention is easily settled by a reference to the record. The president of defendant corporation testifies: "Don't know whether any of the objections I now claim appear on the books of defendant company. There was no objection made by the full board of directors. We never paid any attention to that. The directors talked it over together, and then left it to Jackson and myself." At the time of the last test, the president was absent. Jackson was on the ground, and had charge for defendant. Altogether, it

appears that he had full power to act for his company. Indeed, the defendant seems in no position to question Jackson's authority. It relies for its defense upon the rejection of this machinery by Walker, the president, and his request, by letter to plaintiff, for its removal. Jackson had equal authority with Walker. The power to object included, necessarily, the power to not object, or, in other words, to accept. When Jackson refused to permit Batley to remove the machinery, he accepted it for defendant, and this was done before any letter was written by Walker on this subject. The construction of the dryer was completed July 14, 1893. The first test was in that month, the second was in October, and the last in November of the same year. Defendant, in its answer, admits the contract as stated; admits that the dryer was constructed by plaintiff, but alleges that it did not work satisfactorily; and the second division of this pleading concludes as follows: "And notwithstanding it thereupon became its [plaintiff's] duty, by the terms of said contract, to at once remove its said property composing said dryer, and notwithstanding it was notified by defendant, as it avers the fact to have been, that, unless it did so, defendant would treat its failure so to do as an abandonment of its said property, plaintiff neglected and refused to remove the same, or any part thereof, but abandoned the same. Wherefore defendant denies that there is anything due from it to plaintiff for or on account of said dryer." Some time after the third test spoken of, defendant remodeled the dryer, appropriating some of the materials of which it was originally composed, taking out and selling other of the material, and ever since has used said machine in its business. Counsel for appellant devote much attention in their argument to a discussion of the question whether the dryer was a chattel or a fixture. So long as defendant had not

accepted it, and plaintiff retained a right of removal, the machine was certainly a chattel. Further than this we need not pursue the inquiry. Nor do we deem it necessary to say what the right of the parties would have been, had defendant refused to accept the machine, and plaintiff failed to remove it. That is not the case we have here. The defendant, as we have seen, refused to permit plaintiff to remove the dryer in November, 1893. This fixed the rights of the parties. The letters afterwards written, in which plaintiff was asked to take the dryer out, could not affect the status of the parties, as established by Jackson's refusal, after the third test, to surrender it. This action of defendant, alone, we think, would have bound it to take and pay for the property under the contract.

But this is not all. The defendant has since that time appropriated to its own use the material of which the dryer was composed, and in its answer herein it claims title thereto by abandonment. The general rule is that one who seeks to reject an article, as not in accordance with the contract, must do nothing after he discovers its true condition inconsistent with the vendor's ownership of the property. We see no reason why this rule does not govern the contract in question. Appellant cites authorities to show that there is a distinction to be taken between the duties of the buyer in a case of sale or return, and a sale on approval, in the latter of which classes this case falls. This may be granted. But in no case cited is it held that in sales on approval the buyer can appropriate the property, and not be liable for its price. We do not hold defendant liable here because it did not return the property to plaintiff. It could have done nothing, and been safe, as was the case in *Exhaust Ventilator Co. v. Chicago, M. & St. P. Ry. Co.*, 69 Wis. 454 (34 N. W. Rep. 509), and similar decisions cited by appellant. It is liable in this case because it did something, and something that is entirely at war with

its claim now made, that the title to the property never passed to it under the contract. It came into possesion of this property by reason of the agreement. It has converted it to its own use. In effect, it claims title thereto. How did it get this right of possession and authority to use; if not under the contract, and how can it claim these rights without assuming the corresponding liability to pay? We see no need to review the cases cited. They do not seem to be in point. The doctrine upon which we rest our decision is elementary. The decree below is AFFIRMED.