FOUR TRACTION AUTO COMPANY, Appellee, v. RUDOLPH HURNI, Appellant.

**SALES:** Contract Evidenced by Letter—Duty of Court to Construe.
1 When a buyer is informed by letter of the specific terms on which an article is sold and shipped and the buyer receives the article in accordance therewith, the contract is complete and the construction thereof is solely for the court, irrespective of other subsequent correspondence.

**SALES:** Rescission—Unwarranted Dominion Over Property—Rescission Right Forfeited. An executed contract of sale may be
2 rescinded for breach of an express written warranty. To determine this question of rescission, the purchaser may, in the light of the warranty, fairly test the article purchased. But let the purchaser beware! He must not, in violation of the warranty, assume a forbidden control over such property. Such control may work a forfeiture of his right to rescind. So held in the overloading and altering of an auto truck.

PRINCIPLE APPLIED: An auto truck was rated at 3,000 pounds capacity. Damages from misuse and neglect, and repairs

and alterations outside the vendor's factory without the vendor's written consent, were specifically excepted from the written warranty. The purchaser loaded the truck to at least 3,600 pounds. Repeated and expensive repairs and alterations were made on the machine in violation of these terms of the warranty. *Held,* the purchaser had forfeited his right to rescind the contract.

*Appeal from Woodbury District Court.*—HON. GEORGE JEPSON, Judge.

FRIDAY, JUNE 18, 1' 5.

ACTION at law in two counts, the first upon a sale and delivery of an auto truck and to recover the agreed price therefor; the second count to recover upon a note given for the purchase price of the truck. Defendant claimed the truck did not meet the conditions and comply with the contract. For reply, plaintiff pleaded a waiver or loss of the right to return the truck because of certain changes and repairs made by defendant without the written consent of plaintiff, contrary to the terms of the contract and the warranty under which the machine was sold.. Trial to a jury. At the close of all the evidence, the court sustained plaintiff's motion for a directed verdict, and judgment was rendered against the defendant. Defendant appeals.—*Affirmed.*

*Edwin J. Stason* and *W. G. Sears,* for appellant.

*Carter, Brackney & Carter,* for appellee.

PRESTON, J.—1. Defendant was doing business at Sioux City, Iowa, under the firm or trade name of R. Hurni Packing Company. About the first of January, 1910, and before the correspondence hereafter set out, defendant and his engineer, or master mechanic, went to plaintiff's factory at Mankato, Minnesota, and inspected and tried the truck that was later shipped to defendant. On January 24, 1910, defendant wrote plaintiff a letter, making a proposition for the purchase of the truck. This letter follows:

"Sioux City, Iowa, January 24, 1910.—The Four Traction Auto Company, Mankato, Minn. Gentlemen:—Taking up the matter of purchasing one of your auto trucks we wish to make you a proposition. We will take the truck you offered to our Mr. Hurni, when he was in Mankato, for $2,000.00 with the addition of three oil lamps, horn, tool kit, four chains, one storage battery and six dry batteries, in the following way: We will buy the truck on six months' time, giving you a note for six months, without interest for the full purchase price. If the truck proves to be what you warrant it to be in every way, we will accept it at the end of six months and take up our note. If the truck does not prove satisfactory we will be obliged to refuse same.

"We have considerable faith in your truck, from what we have seen of it, but as it is a new truck and has not had the chance to stand the test of durability and other things that are essential in a good truck, we would not care to purchase one, only on the above conditions.

"There is a very fine field here to place a good many tracks and if you decide to sell to us the truck as above, we believe it will be an easy matter, if your truck is what we believe it to be, for you to place a good many here in Sioux City.

"You, no doubt, know that placing the first truck in a community, is sometimes a very hard thing to do, but if once started and proven satisfactory, the rest is quite easy. If you decide to sell us the truck, and it proves satisfactory, you can easily make arrangements with us to demonstrate and boost your truck, which would mean a great deal to you in establishing your truck in this section of the country.

R. Hurni Packing Co., Per R. Hurni.

"P. S. The note we would give you will be a bankable piece of paper, and if you have faith in your machine, you can get money on same any time. R. Hurni Packing Co."

January 25, 1910, plaintiff made a counter proposition by letter as follows:

"January Twenty-fifth, 1910.—R. Hurni Packing Co., Sioux City, Iowa. Gentlemen:—We have your esteemed favor of January 24th and note contents. Our list price on the Model 'E' Truck you mention is $2,650.00, and of this amount we figure 20 per cent for agency commission. The truck would then net us $2,130.00.

"You can readily understand that our present ambition is not so much to make a large profit as it is to get our cars on the market and with this in mind we have deducted $130.00 and made you a price of $2,000.00 on this truck. We feel that this is all we can stand in the way of reduction even if necessary to lose present sale of the truck. At the same time we need the money as our capital is limited and it would be necessary for us to discount your note and that would be a further deduction of $60.00.

"We are willing to make you the following proposition to show you that we have faith in our car:

"We will take your note for $2,000.00 for six months at six per cent and deliver the car to the railroad in this city with the following equipment:

"Two side and one rear oil lamps, horn, tool kit, wheel chains, one storage battery and six dry batteries and we will guarantee the car as per the inclosed written guarantee.

"We have faith in our car and know that should you decide to purchase it there will be no question as to you keeping it and being satisfied with it beyond your expectations.

"The above offer is made to you for immediate acceptance as there are other parties now negotiating for the purchase of this truck. Four Traction Auto Co."

In response to the above letter, defendant wrote under date of January 29, 1910, as follows:

"January 29, 1910.—Four Traction Auto Co., Mankato, Minn. Gentlemen:—We are in receipt of your favor of the

25th inst. stating your terms on your Model 'E' Truck, and we have considered same. We have decided to accept your offer of $2,000 for this truck, payment to be made by giving you our note for six months at 6 per cent from date of note. Amount of note $2,000, and dated and made same day that truck is received in Sioux City. As per our former proposition, we will give this truck a fair trial for six months, and if it proves satisfactory during said period we will accept same and take up our note, and if not we will be obliged to refuse same.

"As we have stated before, we have every confidence in your machine, if we did not, we would not have made you an offer, for we have had some very flattering offers made to us by different firms, to get their machines introduced into this territory. From what we have seen and can judge of your truck, we believe it to be the best we have seen up to this time and we sincerely hope we will not be disappointed, for we will be just as anxious as you are to have this truck prove to be a winner.

"After having tried this truck for a short time, if we decide it is worth pushing and recommending, we will be pleased to take your agency for Sioux City. This machine will be used all over this city, on all kinds of roads and in every kind of weather and we believe we will have the best kind of opportunities to demonstrate and prove the worth of your truck and make a good many sales for you. If you decide to take this proposition into consideration, let us know what you will be willing to do on a commission basis.

"Our Mr. Hurni stated that you were to furnish a jack with this truck in addition to the other equipment already mentioned. Kindly see that a jack is included in this order.

"You may make the shipment at once and it will not be very long before the first 'Four Wheel Gear Drive Auto Made in the U. S.' will be doing business in Sioux City.

R. Hurni Packing Co.''

February 1, 1910, plaintiff wrote defendant as follows:

"February First, 1910.—R. Hurni Packing Co., Sioux City, Ia. Gentlemen:—We have your esteemed favor of the 29th and have entered your order on one Model 'E' one and one-half Ton Truck with the following equipment:

"Two side and one rear oil lamps, horn, tool kit, wheel chains, one storage battery, six dry batteries and one jack.

"We are awaiting the arrival of a shipment of lamps and tool kits and as soon as they get here we will ship the car; or if the delay appears to be too long we will ship the car without equipment and express that to you when it arrives.

"We are entering your order upon the conditions as stated in our previous correspondence, to wit:

"Upon the arrival of the truck in Sioux City you are to make to us a promissory note of $2,000.00 (bankable paper), the purchase price of the car f. o. b. Mankato, Minn., with interest at 6 per cent per annum due in six months from above date. You are to use the car for six months under the terms of our warranty which you already have and if at the end of that time we have not complied with its terms in every measure, you are to return the truck and we are to return your note cancelled, otherwise you are to take up the note and 'BOOST.'

"We have arranged with agents we now have to pay 20 per cent commission on every car sold at list price and we will be glad to offer you the same terms the territory to be arranged as soon as you are convinced that our car merits your consideration.

"We are anxious to see the Kato 'doing business' in your city and we will hasten shipment as fast as possible.

Four Traction Auto Co."

The written warranty referred to in said correspondence and accompanying the same is as follows:

"OUR WARRANTY

"We guarantee our product for one year from the date of shipment, against defective workmanship or material. Breakages occurring within that time by reason of defective workmanship or material will be replaced free of charge when such part or parts are returned to us for inspection, express or freight prepaid. This guarantee does not apply to damages resulting from accident, misuse or neglect nor does it apply to tires or the batteries or coil.

"We cannot accept any responsibility to the purchaser of our goods when said goods have been altered or repaired outside of our factory unless we have previously given our consent to such alterations or repairs in writing. Four Traction Auto Co., Mankato, Minn."

Thereupon plaintiff shipped to defendant and delivered to the railroad company for him f. o. b. Mankato, Minn., the truck in question. The machine arrived at Sioux City, February 9, 1910, and defendant paid the freight, unloaded it and commenced its use. After the truck had been so received, and on February 17, 1910, the defendant mailed to plaintiff his note for $2,000.00, dated February 9, 1910, and a proposed written contract for execution by plaintiff. The note was not bankable, as had been suggested in some of the correspondence and contained the clause, "Subject to the conditions of a certain contract of even date herewith for the purchase of an automobile truck." We deem it unnecessary to set out the memorandum for contract.

February 19, 1910, the plaintiff wrote defendant a letter, so much of which as is now material is as follows:

"We have your favor of the 17th inclosing contract and note and have gone over same carefully. The contract does not altogether meet with our approval, and in our opinion does not meet the terms of sale. We object to the second clause of the contract which reads as follows: 'It is also

agreed by and between the parties that should the automobile truck prove unsatisfactory to the party of the second part during the six months following the date of this contract by reason of defective workmanship or material, it may be returned by the party of the first part and the aforementioned note cancelled and this contract null and void.' And we also object to the reference in the next clause concerning damages affecting the utility or usefulness of the truck. . . . If you will kindly refer to our letter of the first instant and couple it with the warranty we inclosed, you have a more liberal contract than you could secure from any other maker in the country. We have given you six months in which to pay for it and in that time the car should earn you enough to pay for itself if you have the hauling we think you have. Under the terms of our warranty to you we are going to keep that car in perfect condition for a year, accidents and abuse excepted, and if it was going to develop defects at all it certainly would in that length of time. . . . The note you sent us is a conditional note and we would be unable to negotiate it in this territory until after maturity. . . . Our letter first, together with the warranty, is a clear contract, without quibbling or unnecessary verbiage, contracting against mechanical defect for one year, with the privilege to you to return the car at the end of six months, if we fail to replace defective parts. In other words, your car must be kept mechanically perfect for one year. You stand upon this warranty and forward to us a note without condition so that we may take it to a local bank and deposit it as so much money; and if at the end of the six months the car comes back you will have no difficulty in getting back the $2,000.00 and interest.''

To this, defendant replied on March 1st, stating in substance that defendant was surprised at the contents of plaintiff's letter of the 19th, and claiming that the written memorandum for contract conformed to the statements in

the correspondence. Soon after the truck was received by defendant on February 9th, a key was sheared, necessitating the return of a shaft to Mankato, which was replaced by plaintiff, and on February 15th, plaintiff wrote defendant as follows:

"Mankato, Minn., Feb. 15, 1910.—R. Hurni Packing Company, Sioux City, Iowa. Gentlemen:—We are shipping you by express key and shaft to replace the one sheared in your Kato car. We cannot bear any responsibility in the future for damages resulting from overloading the truck. This truck has a capacity of one and a half tons and will stand some overload, but not nearly another ton as you had on when this key was sheared. If your driver will bear this in mind, he will have no difficulty with the car. In regard to the note you were to send us upon the day the car arrived in Sioux City, we have not received it as yet. Kindly give this your immediate attention. Four Traction Auto Co., E. R. Brown."

It is thought by appellant that there is a conflict in the testimony as to what the contract was and that, therefore, the matter should have been submitted to the jury. Appellant also contends that the correspondence between the parties after the shipment of the truck and its receipt by defendant on February 9th should be considered as a part of the contract. But there is no dispute as to the writing of the letters by plaintiff and defendant which we have already set out, and the interpretation or construction of them is a question for the court. We think there was a meeting of the minds and a completed contract of sale as shown by the letters which culminated in the shipment of the machine, together with the written warranty of plaintiff. Appellee's letter of February 1st clearly embodies the terms upon which the order is entered and the truck shipped; and when the truck was shipped, the defendant did not refuse to receive it, but paid the freight,

1. SALES: contract evidenced by letter: duty of court to construe.

unloaded the truck from the cars and began the use of it, without objection to the terms named. On July 25, 1910, and again on July 29th, defendant notified plaintiff that the truck was unsatisfactory and that they had tried it for six months. Defendant claims there were other difficulties with the machine, but according to appellant's claim, this developed soon after he commenced using the truck. His claim is that it would stall; that it had to be taken frequently to the garage; that the chief difficulty appears to have been in the assembling of the parts and in the application of the power and in the engine; that the plan of the truck was novel and an experiment.

2. Taking up now first the question as to the waiver pleaded by the plaintiff, it is alleged by plaintiff in the reply:

"Plaintiff for further reply states that said truck was improperly used and handled by said defendant while in defendant's possession; that said truck was overloaded beyond its rated capacity; that said defendant made or caused to be made repairs to said truck by persons other than the plaintiff, and outside of plaintiff's factory, contrary to the terms of the contract and agreement between plaintiff and said defendant; and that said defendant did in other respects misuse the truck in question.

2. SALES: rescission: unwarranted dominion over property: rescission right forfeited.

"Plaintiff for further reply states that said defendant, in the making of repairs upon said truck in a manner other and different than is provided for in the written guaranty and contract and agreement between plaintiff and said defendant, thereby accepted said truck as its own, and thereby waived any right to refuse said truck or to return the same to plaintiff, and the said truck thereupon became the absolute property of said defendant without any right in said defendant to refuse or return the same."

The testimony shows that the truck had at different times been overloaded. At one time, when there was an accident to

the machine, plaintiff claims it had a load of forty-six hundred pounds. Defendant claims it was only loaded with thirty-six hundred pounds. But the record is that the truck was rated at one and one-half tons.

The record further shows that, contrary to the terms of the contract and of the written warranty, the appellant, while the truck was in his possession, had repairs made repeatedly at a garage in Sioux City, and had alterations made in the truck itself, changing and altering certain parts of the machine and adding other parts to it. Defendant testifies that his master mechanic put a couple of iron rods on each side of the truck to keep the wheels going straight; says he knows the changes were made, and that they had to do it. He further says: "I do not know how many times I had the truck repaired in Sioux City, probably about twenty times, more or less."

Another witness for defendant says: "One repair was a drive shaft. It was split; I remember that, and we put in a new one; it was an axle shaft. The key had stripped off the gearing."

The same witness says: "The engine did not have enough power and we tried to get more power out of it and tried to change it, tried to change adjustments and things like that."

Another witness says that when he was trying to sell defendant a touring car and while he was making repairs on the truck, he put in a new shaft. He says further: "I am not sure it was a live shaft. A live shaft is connected to a wheel and a drive shaft drives the gears in the differentials. I think it was a live shaft that was broken."

Witness Straub, an automobile repair man, testified that he could tell from an exhibit what work was done on the truck in question. May 7th, seven hours; same day, five and a half hours; on the 9th, three and a half hours by one workman, and the same day, ten hours by another; on the 10th, eight and a half hours by two workmen, and the same day,

ten hours by another party; on the 11th, three hours by one person, two hours by another, and a half hour by another; and same day, eight hours by the witness himself; and on the same exhibit is two hours babbitting; April 17th, two hours babbitting.

Witness Genehm testifies from a shop card of his employer and says that it is for the overhauling for the engine of this truck; says he spent quite a few days in overhauling. He testifies further:

"I think the work was done on the valves and the cylinders and cleaning out the engine. I am pretty sure they put in new valves. I think we put in tapered valves. I suppose these valves remained on the engine when it left the shop, and still remain on it so far as I know. It was not a flat valve. A tapered valve is different from a flat one. The engine had flat valves instead of tapered ones and they had trouble with the timing. The valve stem got bent with the heat from the engine. To correct that I put in tapered valves instead of flat ones."

As stated, all these things were done without the written consent of the plaintiff and contrary to the terms of the contract and the warranty. Under our decisions, a purchaser ordinarily has the right to rescind an executed contract of sale for the breach of warranty. *Upton Mfg. Co. v. Huiske,* 69 Iowa 557; *Gay Oil Co. v. Roach,* 27 L. R. A. (N. S.) 914, 921.

The purchaser has a right to fairly test the machine to learn whether it complies with the warranty and to rescind within a reasonable time if it is not as warranted. *Billmeyer v. Queen Mfg. Co.,* 150 Iowa 318, 323; *Bradley v. Palen,* 78 Iowa 126, 129. But in making the rescission, it is the purchaser's duty to put the other party as near as possible in *statu quo,* and is required to return the machine in the same condition as near as possible that it was when he received it. *Upton Mfg. Co. v. Huiske, supra.* Plaintiff was not required

to receive the truck back if the defendant during the time he had it in his possession misused and damaged it. ' *Bradley v. Palen, supra.*

Under the warranty in this case, defendant did not have the right to repair or alter the truck without the consent of the plaintiff. The undisputed evidence shows that he did make many changes and many repairs. A party may not rebuild a machine according to his own notions as to what is necessary under such a warranty. We think the trial court properly directed a verdict on this ground.

3. Questions as to the warranty are argued, but, in view of the fact that the discussion so far decides the case, we shall refer to this matter briefly. Cases cited by appellant are distinguishable from the case at bar. Some of them are cases where the question involved was as to executory contracts for the sale of personal property not open to inspection of the buyer and not in existence when the contract was made. In such cases it has been held that, in the absence of an express warranty, there may be an implied warranty that the property to be furnished should be merchantable or suitable for the purposes for which it was purchased. Such was the situation in *Russell v. Critchfield,* 75 Iowa 69; *Blackmore v. Fairbanks,* 79 Iowa 282; and like cases.

Appellee contends that the case at bar is upon a written contract of sale containing an express warranty of a known machine manufactured and in existence at the time of the sale, and open to the inspection of the buyer, and which was in fact inspected by the buyer, and contends that the written warranty excludes any other additional or different parol warranty. In support of its contention, plaintiff cites: *Shepherd v. Gilroy,* 46 Iowa 193; *Mast v. Pearce,* 58 Iowa 579; *Nichols v. Wyman,* 71 Iowa 160; *Warbasse v. Card,* 74 Iowa 306; *Western Electric Co. v. Baerthel,* 127 Iowa 467; *Electric Company v. Waterloo Ry.,* 138 Iowa 369; *Seitz v. Brewers' Co.,* 141 U. S. 510 (35 L. Ed. 837).

Appellee concedes that there may be an implied war-

ranty that a known machine already manufactured and inspected is suitable for the purpose for which it was built, but disputes the proposition contended for by appellant that there was any warranty, either express or implied, that the truck was suitable for any particular purpose for which defendant desired to use it. We are inclined to this view, but, as stated, in view of the fact that the case is determined by a prior point, we shall not discuss the case further.

As stated, the petition is in two counts. Plaintiff relies more strongly upon the first count, which is on the sale of the machine and not on the note. The ruling of the trial court does not indicate the ground upon which the motion was sustained.

Under the record, we think the court properly directed a verdict for plaintiff, and the judgment is, therefore,—
*Affirmed.*

DEEMER, C. J., EVANS and WEAVER, JJ., concur.