J. L. Owens Company, Appellant, v. Leland Farmers Elevator Company, Appellee.

**EVIDENCE: Competency—Official Transcript.** Upon the retrial of a cause, the official transcript of the testimony of a witness is admissible on the simple showing that the witness *is not present in court*.

**SALES: Acceptance—Use of Article After Rescission.** Slight use of a machine by a vendee *after he had definitely rescinded the contract*,

*and after suit had been brought on the contract,* does not work a waiver of the rescission and constitute an irrevocable acceptance, *when such use is not inconsistent with the vendor's ownership.* So held when the use was for the sole purpose of enabling counsel for vendee to observe the operation of the machine, in order that he might intelligently prepare the cause for trial.

**PLEADING:** Matters Specially Pleadable—Matters Subsequent to Issue
3 **Joined.** If, after issue is joined, defendant does some act which works a waiver of the very right on which he predicates his defense, then plaintiff, in order to avail himself of such waiver, must plead it.

**TRIAL:** Instructions—Applicability to Evidence. Requested instruc-
4 tions are properly refused when the record furnishes no testimony applicable thereto.

*Appeal from Winnebago District Court.*—C. H. Kelley, Judge.

April 1, 1924.

Rehearing Denied June 28, 1924.

Action to recover the purchase price of a grain-cleaning machine sold by plaintiff to the defendant under a written contract. The defendant pleaded that express and implied warranties had been breached, and that the contract had been rescinded. The cause was submitted to a jury, which returned a verdict for the defendant. The plaintiff appeals.—*Affirmed.*

*Tom Boynton* and *Francis B. Hart,* for appellant.

*Thompson, Loth & Lowe,* for appellee.

Faville, J.—On September 30, 1918, appellee signed a written contract for the purchase of a certain grain-cleaning machine from appellant, at the agreed price of $775, appellee to pay the freight thereon. The machine was shipped and installed in appellee's elevator in December, 1918. Certain tests were made of the machine thereafter, and appellee refused to accept the same. Suit was subsequently brought to recover the purchase price under the contract. The defendant filed a counterclaim for

freight paid.   Judgment was rendered for recovery under the counterclaim, and plaintiff appealed, and the case was reversed by this court.   *Owens Co. v. Leland Farmers Elev. Co.,* 192 Iowa 771.   Upon the retrial of the case, the transcript of the evidence upon the first trial was used by both parties, and the facts of the case as set out in the opinion of this court on the former appeal are substantially the same as disclosed upon a retrial; and it is unnecessary that we detail them at length in this opinion.

I.   It is contended that the court erred in permitting appellee to introduce in evidence the transcript of the evidence of witnesses upon the former trial.   Appellant's contention is that

1. EVIDENCE: competency: official transcript.

the witnesses whose evidence was so introduced were within the jurisdiction of the court, and were within the reach of a subpoena; that in fact they resided in the same county in which the case was being tried: and appellant contends that, under such circumstances, the testimony of said witnesses, as shown in the official transcript, cannot be introduced in evidence on retrial.

It appears from the record that none of said witnesses were present in the court room in attendance upon the trial at the time their testimony was offered from the transcript.

Code Supplement, 1913, Section 245-a, provides that a transcript duly certified by the official court reporter, "when material and competent, shall be admissible in evidence on any retrial of the case or proceeding in which the same were taken, and for purposes of impeachment in any case, and shall have the same force and effect as a deposition, subject to the same objections so far as applicable."

Appellant's specific objection at this point is that, the action being at law, and the witnesses being residents of the county in which it was tried, the deposition of the witnesses would not be available to appellee, and that the statutory provision that the transcript shall have "the same force and effect as a deposition" does, under such circumstances, necessitate that it be excluded.

We do not think that Section 4686 of the Code, providing for certain conditions under which a deposition may be taken, is to be applied to transcripts of evidence under Section 245-a,

Code Supplement, 1913. The statute does not provide that the transcript may be used only under conditions when a deposition could be taken and used, but it does in terms provide that the transcript is admissible in evidence, and that it has the force and effect of a deposition. Under this statute, the rule that the official transcript of the evidence of a witness who testified at a former trial is admissible in evidence when the witness is not present in court, has been repeatedly recognized by this court. *Lanza v. LeGrand Quarry Co.*, 124 Iowa 659; *Fitch v. Mason City & C. L. Traction Co.*, 124 Iowa 665; *In re Will of Wiltsey*, 135 Iowa 430; *Van Norman v. Modern Brotherhood of America*, 143 Iowa 536; *Emery & Co. v. American Ref. Trans. Co.*, 193 Iowa 93. The cases cited illustrate the application of the rule.

We do not find error at this point.

II. The grain cleaner in question was shipped by appellant and installed in appellee's place of business. Attempts were made thereafter to test the machine, which are described in the opinion of the court on the former appeal.

It developed upon the present trial that, after appellee had refused to accept the machine, and shortly before the first trial of the case, appellee operated the machine for a short time one day, in the presence of appellee's counsel, for the sole purpose of enabling the counsel to observe its operation, as a preparation for the trial of said cause. It is now argued upon appeal that this limited use of the machine, for this avowed purpose, constituted an acceptance of the machine by appellee, and that appellee cannot now be heard to rely upon its refusal to accept the same, or to claim rescission of the contract of purchase.

2. SALES: acceptance: use of article after rescission.

Was the use of the machine, in the manner and under the circumstances and for the purpose shown, either an acceptance of the machine by appellee or a waiver of its right to rescind for breach of contract? It is an elementary rule that acceptance and use of a purchased article are inconsistent with a claim of rescission. The very basis of rescission is the restoration of the *status quo*, and this is inconsistent with the continued use by the vendee of the purchased article. But whether a use of the article is an acceptance of the same, so as to prevent the vendee from rescind-

ing, and binds the vendee to the payment of the purchase price, is largely a matter of intent, to be determined from the facts and circumstances of the transaction. Whether the use of a purchased article to *any* extent and to *any* degree constitutes a legal acceptance of the article must, of necessity, be gathered from the facts and circumstances surrounding such use, the purpose of the use, and the intent of the vendee in so using. The use in the instant case was made after appellee had rescinded the contract and rejected the machine and refused to pay therefor. It does not come within the class of cases where the use is preliminary to the acquiring of sufficient knowledge on the part of the vendee for him to determine the facts with regard to the purchased article, so that he may decide to accept or reject the same. Such preliminary use is frequently contemplated or provided for in the contract of purchase. Nor does the case come within the class where, after delivery of an article, upon use it is discovered that the same is faulty, or fails to comply with representations or warranties, and the purchaser, under an executory contract, rescinds the same and restores the *status quo*. In this case the testing and experimentation with regard to the use and adaptability of the machine had been had, and appellee had rejected the same, and had repudiated and refused to be bound by the contract, and had definitely rescinded the same. Appellant had left the machine, however, in the custody of appellee. Appellee could doubtless have withdrawn its previous rescission and elected to accept the machine. It could have done this in a formal manner, by a statement or declaration to that effect. It could likewise have done so by its acts, if such acts were inconsistent with its right to rescind, and if they evidenced an acceptance of the machine on its part.

In this case, the only act which it is now claimed constituted such acceptance was the operation of the machine for a brief time, for the sole purpose of advising appellee's counsel as to the manner in which the machine was designed to work, in order that he might more intelligently present appellee's case at the trial. There is no claim that this use of the machine was in any way connected with appellee's business, or that it was even an experimentation on the part of appellee with regard to its

manner of working, or an attempt to determine whether it complied with the warranty. Surely, it could not be contended that it would be an acceptance of the machine that appellee and its counsel should examine the machine and look it over and inspect its various parts for the purpose of becoming informed in regard thereto and being better qualified thereby to try the lawsuit. This was exactly what was done. Appellee's counsel went where the machine had been left by appellant, in the custody of appellee, in its place of business, and observed and examined the same for the sole purpose of determining its condition, design, and method of operation, to enable him the better to try the pending case. During such inspection the machine was put in operation, not for the purpose of in any way using the same in connection with appellee's business, but solely to enable counsel to see the machine, not only as it stood idle, but as actually in operation.

Whether appellee, as custodian of the machine, under the circumstances, had any legal right to do this, and whether it would be liable for damages to appellant for so doing, is not the question before us. No issue of trespass is herein involved. The sole question is whether the facts and circumstances of the demonstration of this machine to appellee's counsel, for a few moments, solely for the purpose of advising counsel of its method of operation, indicated such use by appellee as constituted either a waiver of its previous rescission or an acceptance of the machine.

We are cited to authorities on the general proposition that the use of a machine by a purchaser for the purpose for which it was designed, is evidence of acceptance on his part, and is inconsistent with a claim to a right of rescission. The general rule is well established, and we are not disposed to depart from it; but we think this rule does not apply to the facts in the case at bar. The temporary operation of the machine, under the circumstances, and for the purpose disclosed, was not conclusive of an intent on the part of appellee to accept the machine. There was no use of the machine in connection with appellee's business, in any proper sense of that term. It was a mere brief demonstration of the method of operation of the machine, which could be better obtained by putting the same in motion than by having it stand idle. We do not think that this operation of the

machine was inconsistent with appellee's previous rescission of the contract of purchase. In any event, it was a question for the jury.

The general rule on the subject under consideration is well stated in a note to 36 L. R. A. (N. S.) 470, as follows:

"On discovering that the property is not such as was contemplated, he must offer to return it. If he neglects to do so immediately upon discovering the breach of warranty, and keeps it, treating it as his own, he cannot afterwards rescind. * * * If, after ascertaining defects entitling him to rescind, the purchaser exercises dominion over and avails himself of benefits from the purchased property to which he could be entitled only as owner, it is a waiver."

In *Frey-Sheckler Co. v. Iowa Brick Co.,* 104 Iowa 494, it appeared that the purchaser appropriated to his own use the material of which the machine in question was composed. We said:

"The general rule is that one who seeks to reject an article, as not in accordance with the contract, must do nothing after he discovers its true condition, inconsistent with the vendor's ownership of the property. * * * It is liable in this case because it did something, and something that is entirely at war with its claim now made, that the title to the property never passed to it under the contract."

In *Hensen v. Beebe,* 111 Iowa 534, suit involved a corn husker which had been delivered to the purchaser. The evidence showed that, while the purchaser retained it in his possession, he loaned the harvester to another party, who husked six acres of corn therewith. We held that such loan was the exercise of ownership over the machine by the purchaser, and that the court should have instructed the jury that such loaning and use without the knowledge or consent of the seller would constitute an acceptance of the machine. These cases do not control the case at bar.

The rule as to whether the act of the vendee constitutes an acceptance is largely one of intention, and it is to be determined by whether or not such use is inconsistent with the claimed right of rescission on the part of the vendee.

In *Inman Mfg. Co. v. American Cereal Co.*, 124 Iowa 737, we said:

"The question whether there was an acceptance of the machines by the use of a part of them after the outfit had been rejected would depend largely upon the facts, and was, therefore, a jury question; and the court should have received the evidence offered, explaining the purpose of its use and the reason therefor."

We think this is the true rule, and that in this case the question as to whether or not the brief demonstration by appellee of the machine, for the purpose of permitting counsel to observe its manner of operation, was such a use as was the exercise of ownership, and was inconsistent with appellee's claim of rejection, was for the jury. The court submitted this question to the jury under a proper instruction, and advised the jury that, if they found from the evidence that the use referred to was not consistent with the plaintiff's ownership, then "such use would constitute an acceptance thereof, notwithstanding its former refusal to accept the same; and if you so find, your verdict shall be for the plaintiff."

We think that, under the facts and circumstances disclosed in the record, the question was one properly for the determination of the jury, and that the court did not err in submitting it to them for determination. As bearing somewhat on the question under consideration, see *Creamery Pkg. Mfg. Co. v. Benton County Creamery Co.*, 120 Iowa 584; *Fox v. Boldt*, 172 Wis. 333 (178 N. W. 467); *Richardson v. Lowe*, 149 Fed. 625; *Bell v. Anderson*, 74 Wis. 638 (43 N. W. 666); *Norton v. Dreyfuss*, 106 N. Y. 90 (12 N. E. 428); *Schwartz v. Church*, 60 Minn. 183 (62 N. W. 266); *Kahn v. Klabunde*, 50 Wis. 235 (6 N. W. 888).

Furthermore, the alleged act of acceptance occurred after the rescission by appellee, and after suit had been brought. Appellant filed no pleading claiming an acceptance of the machine on the part of appellee, or a waiver of the rescission previously made by appellee. These matters, occurring subsequent to the commencement of the case and the joining of issues, should have been raised by supplemental petition or amend-

3. PLEADING: matters specially pleadable: matters subsequent to issue joined.

ment to conform with the proof. *Dierksen v. Pahl*, 194 Iowa 713; *Bernhard v. Washington Life Ins. Co.*, 40 Iowa 442.

III.   Error is predicated upon the refusal of the court to submit to the jury a requested instruction. The instruction was to the effect that it was the duty of the vendee, in addition to giving the vendor notice of the failure of the machine to operate, to thereafter provide suitable grain with which the vendor, under its operation, might test the machine, and that, unless such grain was furnished by defendant at its elevator, and appellant given a reasonable opportunity to demonstrate such machine in conformity with a contract of guaranty, the vendee had no right to arbitrarily reject the machine and refuse to comply with the contract as to the payment of the purchase price, if the vendor manifested a willingness to demonstrate the machine when suitable grain was furnished by defendant.

**4. TRIAL: instructions: applicability to evidence.**

The learned trial court expressed the opinion that:

"In order to warrant the giving of said instruction, the plaintiff should have requested defendant to furnish other grain, and give defendant a reasonable time within which to do so, if plaintiff desired other grain than that contained in defendant's elevator to be used in testing said machine. There is no showing that this was done."

It appears that, after the machine was installed, appellant sent its employees to appellee's place of business to demonstrate and test the machine, and it is contended that the grain in appellee's elevator at said time was sprouted and damp and unfit to make a proper demonstration of said machine. No other grain was furnished by appellee for testing purposes, nor does it appear that appellant requested appellee to furnish other grain for said purpose.

In view of this situation and the record regarding said matter, we do not think the court erred in refusing the requested instruction. The case presents essentially a fact question.

We find no error of law requiring a reversal. The judgment is, therefore,—*Affirmed.*

ARTHUR, C. J., EVANS and PRESTON, JJ., concur.