ADVANCE-RUMELY THRESHER COMPANY, Appellant, v. GLENN WHARTON, Appellee.

No. 40366.

DECEMBER 9, 1930.

*Strock, Sloan & Herrick,* for appellant.

*R. N. Lynch, Kelly & Laughlin,* and *Hasselquist & Chew* for appellee.

WAGNER, J.—The plaintiff, Advance-Rumely Thresher Company, a corporation, has its head office at La Porte, Indiana, and a branch office at Omaha, Nebraska. It also has a local agent at Onawa, Iowa. The defendant is a boot manu-  facturer, living in Omaha, who owns and operates a considerable quantity of land in this state, in close proximity to Onawa and Mon-

damin. On June 28, 1928, the defendant, by a written contract, purchased from the plaintiff at its branch office in Omaha a Number 3 Rumely-Combine harvester, to be delivered at Onawa, Iowa. The purchaser executed two notes, to be applied upon the purchase price, one in the amount of $625, due August 15, 1928, which is the note in suit, and the other for $620, due September 15, 1928. The remainder of the purchase price, $301, was paid in cash at the time of the purchase, or soon thereafter. The written contract contains the following warranty:

"Said machinery is warranted to be well made and of good material and with proper use capable of doing as good work as any other machine of the same kind, size and rated capacity, working under like conditions."

The contract provides that the purchaser shall not be entitled to rely upon any breach of warranty, or to rescind the contract, or to any claim or set-off against the vendor because of any breach, unless notice of the defect or breach, particularly describing the same and specifying the time of discovery thereof, is given by registered letter, addressed to the vendor at its head office, posted within four days after such discovery, and unless such defect or breach appears within ten days after the first use of the goods, and unless the vendor fails to remedy such defect or breach by substitution of parts, or otherwise, within a reasonable time after receipt of such notice, "which substitution it shall have the right to make." The contract further provides that the purchaser shall render necessary and friendly assistance to the vendor in and about remedying the defect.

Prior to the signing of the contract, there was considerable talk, as between the defendant and the assistant manager of the branch office at Omaha, appropriate objection to all of which testimony was made by the appellant, and it is not set out in the abstract. Under the issue of rescission and waiver thereof, as made by the pleadings and the record, the right thereto would be the same, whether based on fraud or breach of warranty. At the time of the purchase, the defendant informed the representative of the plaintiff that he required a 12-foot machine, and the representative informed him that they had a machine with a 10-foot cutting stretch and a detachable 2-foot extension which could be placed on it, and thus make it a 12-foot machine, which was

inspected by the defendant before the purchase. It thus appears that it was bought and sold as a 12-foot machine. The harvester was delivered at Onawa July 10, 1928, and then hauled 20 miles, to a 60-acre field near Mondamin. Plaintiff's service man helped start the machine, but, because the grain was too green, the operation was deferred until a later day. A few days later, the machine was started, and was thereafter operated on different days until the 13th day of August. During the season of 1928, the machine harvested 80 acres of wheat in one tract, 20 acres in another, and part of another 180-acre tract. The harvester had given considerable trouble, and plaintiff's service men were sent, at various times, to adjust the machine, repair its parts, and endeavor to have it work to the satisfaction of the defendant. There is evidence that, on the third day, the defendant threatened to rescind. We deem it unnecessary to set out the evidence in detail as to the working of the machine, as it presented a jury question as to whether or not the harvester complied with the warranty. The defendant gave testimony to the effect that he hired a McCormick 10-foot machine to help harvest the 1928 crop; that the McCormick and Rumely machines were operated in the same field, cut the same type and quality of wheat straw, and under the same conditions, when he made the comparison; that, on August 9th, the Rumely harvested 154 bushels, 40 pounds, and the McCormick, 428 bushels. On August 10th, the Rumely harvested 180 bushels, 20 pounds; and the McCormick, 572 bushels, 20 pounds. On August 11th, the Rumely harvested 256 bushels, 40 pounds; and the McCormick, 499 bushels, 40 pounds. On August 12th, the Rumely harvested 60 bushels, 50 pounds; and the McCormick, 155 bushels, 50 pounds. He further testified that, during the test, the Rumely ran only a short time each day, because of continual breaking of fan belt and canvas. He also testified that the wheat from the McCormick was a great deal cleaner than that harvested by the Rumely.

Finally, on August 13, 1928, the defendant tendered the machine to the plaintiff's agent at Onawa, and by registered letter notified the plaintiff, at its home office, of his election to rescind the contract, and demanded the return of the purchase money. He states therein that the defects which have been reported to the representatives of the plaintiff from time to time have not been satisfactorily fixed, and that he feels that he has waited a reason-

able time for the repairs to be made. He further states in said letter, as follows:

"In addition to many minor defects which have been called to their attention, the main five defects that are continuously giving us trouble, with the result that at no time since we received the machine, have we been able to get in more than two or three hours work per day, are as follows:

"First: The bottom plate on the return catching at the end.

"Second: The elevator platform catching at the top and breaking the slats.

"Third: The belts on the separator coming off or breaking.

"Fourth: The belt on the engine breaks continuously as not enough room for it.

"Fifth: The elevator is too long for the one pulley so that it breaks continuously.

"In regard to the fourth defect, your service men a week ago Sunday took the head of the engine down completely, sawing off certain bolts which he claimed were causing this trouble. However, since he did this work, this belt has continued to break once every day since then, that we have used the machine.

"For your further information, we have hired a McCormick Combine, putting it in the same field with your machine, with the result that both machines are working under exactly the same condition, but we find that the McCormick, every day since it has been in the field, has turned out more than double the amount of grain that your machine has. This of course, is directly contrary to the guarantee in your sales contract.

"If you desire, we can furnish you with a certified list of the number of bushels which your machine and which the McCormick ten-foot combine has been doing in the same field, from which you will find that the McCormick has been doing more than two to one, both in acres and bushels what this twelve-foot machine has been doing. This of course is directly contrary to the guarantee in your sales contract and therefore, we are returning this machine to your agent and herewith make demand for return of the cash payment made on the machine totaling $301.00 and the return of the purchase notes signed for the balance due on this machine."

Upon receipt of this letter by the plaintiff at the head office,

it wrote him, on August 14th, stating that copy of his letter had been referred to the branch manager at Omaha, and assuring him that Mr. Flowers (the manager at Omaha) would give the matter of defendant's complaint immediate attention. On August 16th, the branch office at Omaha wrote him declining to accept the return of the machine, for various reasons, and stating "that we stand ready and willing to remedy the defects, if any, complained of at the earliest reasonable date. If you will inform us when you desire a service man to go over this machine and place it in proper operating condition, we will have a competent man at the machine on the date you mention and will make the necessary repairs. Please advise what date you wish our mechanic to work on the machine and whether he shall do so at your farm near Onawa or in Onawa." To this letter the defendant answered, declining any further service from the plaintiff's service men, standing firmly on the rescission made in his former letter, giving the comparative test of the Rumely and McCormick machines, as hereinbefore set out, and further saying: "We are convinced that it is impossible to repair this machine so that it will work satisfactory, but there has to be a radical change made in the construction of at least certain parts of this machine, before it will work satisfactorily," and further saying: "Finally, Sunday August 12th so many things broke on the machine, that we made no further attempt to try and operate it, but returned same to your agent, in accordance with the terms of your Sales Contract and finished the field with the McCormick."

The original notice in this cause was served upon the defendant on June 18, 1929. It will be observed that the notes were due many months before. From August 13, 1928, the date of the letter announcing rescission, until after he was served with notice of this suit, the Combine (machine) was not used, but stood in the shed on one of defendant's farms near Onawa. He used the machine in 1929 for six days, and by its use harvested 60 acres of wheat, yielding 1,182 bushels. At this time, the defendant removed the 2-foot extension and used the machine with a 10-foot cut, claiming to compare it with a Massey-Harris Combine and a McCormick Combine, both of which were 10-foot machines. The machine was used in a field of 280 acres.

At the close of the defendant's evidence, the plaintiff moved for a directed verdict, and before the ruling thereon, leave was asked to recall the defendant as a witness. He then testified

that he used the Combine in 1929 for the purpose of making a test, to get evidence in this lawsuit, and did so under instructions from one of his attorneys. The motion for a directed verdict was overruled, and the same was renewed at the close of all of the evidence, and again overruled. This presents the first question for our consideration. It is the contention of the appellant that the undisputed evidence shows that the defense of rescission has been waived; that, after defendant claimed to have tested and tendered back the machine and rescinded the contract in 1928, he used it in 1929 for the purpose designed, in his own business, for his own profit, to an unreasonable extent, not in the presence of his counsel or merely for demonstration, and claimed a right to be testing the machine as a 10-foot machine, which he had no right to do, because it was admittedly sold as a 12-foot machine.

Should the question of rescission have been submitted to the jury? It will be noted from the foregoing that, on August 13, 1928, the defendant made his election to rescind, stating in the letter of that date his grounds for rescission, claiming that the harvester did not comply with the warranty, and stating wherein it did not comply. He tendered the machine to the plaintiff, and demanded the purchase money. When the plaintiff tendered its services to repair the machine to comply with his demands, he, by letter, refused the same, standing by the rescission made in his letter of August 13th. Was not his act in using the machine for 6 days in the summer of 1929, in harvesting 60 acres of wheat, yielding 1,182 bushels, inconsistent with his former act of rescission, so as to constitute a waiver of the same? By his act of rescission, he declared, in effect, that the plaintiff was the owner of the machine. He had fully tested the machine in 1928, compared it at that time with the McCormick, and made known to the plaintiff the result of the comparison. Could he thereafter use the machine, which by his act of rescission he declared to be the appellant's machine, to make further tests, in order to obtain evidence for the lawsuit, after he had fully satisfied himself as to the tests made in 1928, and then successfully deny that he is the owner of the machine? Could he, by the use of the machine for 6 days, in harvesting 60 acres of wheat,—as much as or more than the average farmer raises in one year,—with the wear and tear on the machine which was necessary in harvesting the same, place the plaintiff *in statu*

*quo?* Was not his use of the machine in 1929 in his own business and to his own profit, in harvesting 1,182 bushels of wheat, inconsistent with his right of rescission, and did not said act make it his, instead of the plaintiff's, machine? When the buyer does any act in relation to the goods purchased which is inconsistent with the ownership of the seller, this amounts to an acceptance. Section 9977, Code, 1927. The general rule is that one who seeks to reject an article as not in accordance with the contract or warranty must do nothing after he discovers its true condition, inconsistent with the vendor's ownership of the property. If he does so, he will by said inconsistent act become the owner of the property. *Frey-Sheckler Co. v. Iowa Brick Co.,* 104 Iowa 494; *Hensen v. Beebe,* 111 Iowa 534; *Upton Mfg. Co. v. Huiske,* 69 Iowa 557; *Wetter Bros. v. Otto,* 179 Iowa 873; *Four Traction Auto Co. v. Hurni,* 170 Iowa 476; *Cream City Glass Co. v. Friedlander,* 84 Wis. 53 (54 N. W. 28); *Owens Co. v. Leland Farmers Elev. Co.,* 198 Iowa 271; *Butler Mfg. Co. v. Elliott & Cox,* 211 Iowa —. In *Frey-Scheckler Co. v. Iowa Brick Co.,* 104 Iowa 494, this court made the following pronouncement:

"The general rule is that one who seeks to reject an article, as not in accordance with the contract, must do nothing *after he discovers its true condition* inconsistent with the vendor's ownership of the property. * * * It is liable in this case because it did something, and something that is entirely at war with its claim now made, that the title to the property never passed to it under the contract." (Writer's italics.)

The defendant had discovered what he claimed to be *the true condition of the machine* by the test made in 1928. The appellant gave him no right or consent to use the property which the defendant by his former act of rescission had declared to be its property. In *Hensen v. Beebe,* 111 Iowa 534, a corn harvester was sold to the defendant, on the condition that, if it worked well, he should pay for it. It was shown that the defendant loaned the machine to another party, to cut his corn; and it was held, after quoting the general rule hereinbefore quoted, that, as he had done an act in connection with the property inconsistent with the ownership of the seller, this amounted to an acceptance by the buyer. It was said:

"Surely, the defendant had no right to loan the harvester without the consent of the plaintiff, unless as owner thereof."

In *Four Traction Auto Co. v. Hurni*, 170 Iowa 476, we said:

"The purchaser has a right to fairly test the machine to learn whether it complies with the warranty and to rescind within a reasonable time if it is not as warranted. * * * But in making the rescission, it is the purchaser's duty to put the other party as near as possible *in statu quo,* and [he] is required to return the machine in the same condition as near as possible that it was when he received it."

After cutting the 60 acres of wheat in 1929, the defendant could not restore to the plaintiff the *status quo,* by reason of the wear and tear on the machine by said use, as the machine was on August 13, 1928, when the defendant by his act of rescission asserted that the machine belonged to plaintiff. In *Wetter Bros. v. Otto,* 179 Iowa 873, a corn binder was sold to the defendant, with a guaranty that it would work, etc. The question dealt with waiver of the right to test, as resulting in acceptance. We there said:

"The evidence disclosed that, after defendant had tested the machine, he allowed his son, W. E. Otto, to take it to the latter's farm and cut considerable corn * * *. The defendant had previously tested the binder and was aware of how it worked, and to loan it, under the circumstances recited, was a clear assertion of ownership in himself. * * * That firm had not authorized defendant to do anything with the machine other than test it; and when he assumed to permit another to take it away and operate it, his conduct cannot be harmonized with any other theory than that he did so as owner of the machine, and on this ground the court might well have directed a verdict for the plaintiff."

In *Cream City Glass Co. v. Friedlander,* 84 Wis. 53 (54 N. W. 28), defendant furnished a large quantity of soda ash, to be used in the manufacture of glass. This merchandise was deemed unfit by the purchaser, and he definitely rescinded. Thereafter, he used about 1,500 pounds of the article, in making a test to procure evidence for the trial. The court clearly pointed out that the purchaser has a right to make necessary reasonable tests, and

has a reasonable time in which to make them; but that, after he has taken a definite position, and rescinded his contract, he has no right to further use what he claims is the other party's property, to make experiments and tests. Referring to the rescission, the court said:

"They took their position definitely. After that act, they could not deal with the property in any way inconsistent with the rejection, if they proposed to insist upon their right to reject. *Churchill v. Price*, 44 Wis. 540. They must do no act which they would have no right to do unless they were owners of the goods. Benj. Sales (6th Ed.), Sec. 703. Under these rules it is evident the plaintiff had no right to use up a quantity of the material several weeks after the rejection. By the rejection it became defendant's property, if such rejection was rightful. Plaintiff had no right to use any part of it. It is claimed that the use was simply for the purpose of providing evidence of unfitness for the purposes of the trial of this case; *but one has no right to use his opponent's property for the purpose of making evidence. The act was an unmistakable act of ownership, and entirely inconsistent with the claim that the material had been rejected, and was owned by defendant.*" (The italics are ours.)

In *Owens Co. v. Leland Farmers Elev. Co.*, 198 Iowa 271, the machine, a grain cleaner, was operated by the purchaser for a very short time, in the presence of his attorneys, to enable them to observe its operation, as a preparation for trial of the case; and it was urged that this very limited use of the machine for this avowed purpose constituted an acceptance of the machine, and that the purchaser could not, by reason thereof, claim rescission of the contract of purchase. It was held that, under the peculiar facts of that case, the question was for the jury, but we there said:

"The general rule is well established, *and we are not disposed to depart from it* [writer's italics]; but we think this rule does not apply to the facts in the case at bar. The temporary operation of the machine, under the circumstances, and for the purpose disclosed, was not conclusive of an intent on the part of appellee to accept the machine. There was no use of the machine in connection with appellee's business, in any proper sense of that term. It was a mere brief demonstration of the method of

operation of the machine, which could be better obtained by putting the same in motion than by having it stand idle. We do not think that this operation of the machine was inconsistent with appellee's previous rescission of the contract of purchase. In any event, it was a question for the jury."

It will be observed that the facts in the *Owens* case are not analogous to the facts in the instant case, and are clearly distinguishable. In the *Owens* case, it was a mere temporary operation, for observation by the attorneys; in this case, there was no observation by attorneys, and instead of being a temporary operation, the machine was operated for six days. In the *Owens* case, the machine was not operated in connection with the purchaser's business; in the instant case, it was operated in connection with the purchaser's business of harvesting 60 acres,— 1,182 bushels of grain. In the *Owens* case, the only benefit achieved by the temporary operation of the machine was the benefit to the attorneys, in seeing it in operation for that brief period of time; in the instant case, the purchaser received 1,182 bushels of harvested and threshed wheat. In the *Owens* case, there could have been no material depreciation in the value of the machine, resulting from the temporary operation; in the instant case, the wear and tear in operating the machine for 6 days in harvesting 1,182 bushels of wheat from 60 acres was considerable, and this fact is shown by the record. Thus, the *status quo* of the machine as it was on August 13, 1928, when defendant by his act of rescission asserted that the machine belonged to appellant, cannot be restored. While the appellee contends that he used the machine for the purpose of getting evidence in this lawsuit, he had already made his test in 1928, and as a result thereof, was thoroughly satisfied that the machine did not comply with the warranty, and so informed the plaintiff by his letters. As held in *Cream City Glass Co. v. Friedlander*, 84 Wis. 53 (54 N. W. 28), he had no right to use property which he claimed belonged to defendant, in order to obtain evidence; in any event, he did not have the right to use the machine to the extent which he did use it. Moreover, the test which he claims to have made in 1929 was made, not as a 12-foot machine, as it was sold, but as a 10-foot machine. In view of the foregoing authorities and the record as we find it, it must be held that his unwarranted and unauthorized use of the machine to the extent to which he used it,

during the harvesting season of 1929, is inconsistent with any other claim than that he was owner of the harvester, and constitutes a waiver or loss of his right to insist upon rescission.

The court also submitted to the jury, defendant's counterclaim for damages for $500 for breach of warranty. As to this, the appellant complains. This contention was properly raised in  the trial court. It is its contention that the written contract of purchase and sale provides for rescission as the sole remedy, and a waiver or release of all other contractual claims against the appellant. In support of this proposition, the appellant relies upon *Westbrook v. Reeves & Co.*, 133 Iowa 655; *White v. Miller*, 132 Iowa 144; *King v. Towsley*, 64 Iowa 75; *Minneapolis Threshing Mach. Co. v. Hocking*, 54 N. D. 559 (209 N. W. 996). These authorities hold that the parties to a written contract may stipulate therein for a particular remedy in case of a breach of warranty, and that, in such event, the parties are limited to and bound by the remedy thus provided. The appellee does not dispute the legal proposition, nor appellant's contention that the contract provides that rescission is appellee's sole remedy for any contractual claims which he may have under the contract as against the appellant. Appellee's claim is that his counterclaim is not for breach of warranty, but is founded upon tort, for false and fraudulent representations. We have read and reread quite carefully the counterclaim in which he asks damages. It cannot be said to state a cause of action in tort for false and fraudulent representations. It states only a cause of action for breach of warranty. It does not contain the elements necessary to constitute actionable fraud. Appellee, in his argument, frankly states that his counterclaim asserted to be founded on tort "was not real well pled." We will add that no cause of action in tort is therein pleaded. It was not so considered by the trial court, but was submitted as a cause of action for breach of warranty. Since appellee does not dispute appellant's contention as to rescission's being the sole remedy for the contractual rights arising under the contract between the parties, the submission of appellant's counterclaim for breach of warranty was improper.

Our decision thus far makes it unnecessary to consider the claimed errors on the introduction of testimony and in the in-

structions given by the court to the jury, which are ably argued by the respective parties. The court should have sustained appellant's motion for a directed verdict.

For the foregoing reasons, the judgment of the trial court is reversed, and the cause remanded.—*Reversed.*

MORLING, C. J., and STEVENS, DE GRAFF, and ALBERT JJ., concur.