JOHN R. GRAHAM & others, trustees, *vs.* HATCH STORAGE BATTERY COMPANY.

Norfolk.    March 15, 1904. — June 23, 1904.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Sale,* Acceptance.    *Contract,* Performance and breach.    *Waiver.*    *Evidence,* Materiality.

One who receives an electrical storage battery manufactured for him under a contract in writing on which he has made several payments, and finding it not to be in accordance with the contract seasonably notifies the manufacturer of his rejection of the battery, but thereafter continues to use it in his business for several months and until he is enjoined from doing so in a suit by a third party, has lost his right to reject the battery and recover the money he has paid on account of it, his only remedy being an action for damages for breach of contract.

In an action to recover money paid under a contract for the purchase of an electrical storage battery on the ground that the battery is not in accordance with

the contract, in which the defendant prevails on the ground that the plaintiff has lost his right to reject the battery by continued use of it after notifying the defendant of his refusal to accept it, the exclusion of evidence, that the battery furnished by the defendant is an infringement of a patent held by another person, gives no ground for exception, this evidence being material only on the question of damages for breach of contract which is not the issue.

CONTRACT, with five counts, as stated in the first paragraph of the opinion.   Writ dated April 27, 1899.

In the Superior Court *Bell*, J. ordered a verdict for the defendant, making the rulings stated in the opinion, and by consent of the parties reported the case for determination by this court.   If there was no error in the rulings judgment was to be entered on the verdict.   If the verdict was ordered for the defendant improperly, but there was no error in rulings as to the admission or exclusion of evidence or in refusing requests for rulings of law, if the findings of the jury warranted it judgment was to be entered for the plaintiffs on the fourth count in the sum of $1,800 with interest from the date of the writ.   If the verdict was ordered improperly, and there was error as to the admission or exclusion of evidence or in the refusal of rulings requested, a new trial was to be granted on all issues to which such errors applied.

*Z. S. Arnold*, for the plaintiffs.

*A. M. Lyman*, (*E. D. Chadwick* with him,) for the defendant.

HAMMOND, J.   On September 29, 1898, the plaintiffs and the defendant entered into a written contract by the terms of which the defendant was to manufacture, set up and put in practical operation at the power plant of the plaintiffs, an electrical storage battery having a capacity of seven hundred ampere hours, for which the plaintiffs were to pay $2,195.   In order to put the battery in condition for practical operation, it was necessary that, after the parts were "assembled" and put up, an initial charge of electricity, continuing for about one hundred hours, should be given, to change the chemical nature of a certain kind of lead used in its construction.   The battery was to be delivered to the plaintiffs on or before November 19, 1898.   Before the delivery the plaintiffs had made three payments of $500 each on the contract, and upon December 20, 1898, there was an additional payment of $300.   The plaintiffs being dissatisfied with the battery brought this action, the writ being dated April 27, 1899.

The declaration contains five counts, of which the first three are for damages for the failure of the defendant fully to comply with the terms of the contract, the fourth is to recover $1,800 money had and received by the defendant to the plaintiffs' use, and the fifth is to recover damages for false and fraudulent representations as to the capacity of the battery.

The trial occupied between five and six days. Upon the third day, after the plaintiffs' evidence was in and while the defendant's evidence was going in, the plaintiffs contended that they properly had rejected the battery and stated that they should rely only upon the fourth count; and in accordance with this statement the trial proceeded, and the case was submitted to the jury, on that count alone.

The main issues were whether the battery was of the capacity called for by the contract, whether the initial charge was given properly, and if not, who was at fault, and whether the battery had been accepted by the plaintiffs. Numerous requests for instructions were presented by the defendant, some of which were given and some refused. Twelve separate and distinct questions were presented to the jury. By their answers to the first eleven it appears that they found in substance that the battery was not of the capacity called for by the contract, and would not have been even if the initial charge had been given properly; that they were in doubt whether this charge had been given properly, but, even if it had not, " it was the fault of the defendant," and that the plaintiffs never accepted the battery but rejected it within a reasonable time, to wit, in January, 1899. So far the answers were favorable to the plaintiffs. But to the twelfth question, namely, " Until what time did the plaintiffs use the battery?" the jury answered " Until May, 1899." This answer was in accordance with the undisputed facts, for it was unquestioned that the plaintiffs had used the battery from the time it had received its initial charge in November, 1898, until May 29, 1899, and that they stopped then only because an injunction was served on them by process from the " United States Court" in a suit brought not by the defendant but by a rival corporation, on the ground of infringement of certain letters patent.

In this state of things the plaintiffs requested the judge to

direct a verdict in their favor upon the fourth count, for the sum paid as above stated by them and interest, but the judge declined so to do, and ruled that because of the issue of fact found by the jury in their answer to the twelfth question the plaintiffs could not recover ; and directed a verdict for the defendant.

Certain exceptions to rulings upon evidence were taken by the respective parties. The defendant further excepted to the refusal of the judge to give some of the rulings requested and to certain portions of the charge to the jury, and the plaintiffs excepted to the refusal of the judge to direct a verdict for the plaintiffs as requested, and to the order directing a verdict for the defendant. The case is before us upon a report made by the judge, by the terms of which these various exceptions are before us.

Although the findings of the jury were sufficient to show that the plaintiffs had a valid claim for damages for the failure of the defendant fully to perform the contract, yet it must be borne in mind that the plaintiffs had abandoned the counts framed for that purpose and had elected to proceed upon the ground that they had rejected the battery for good cause and therefore were entitled to recover back the money which they had paid. At first sight there seems to be an inconsistency between the findings of the jury on the one hand that the plaintiffs never accepted the battery but seasonably rejected it, and the finding on the other that after the rejection they used it for several months, but upon a careful reading of the record we think that the inconsistency is more apparent than real. In view of the evidence and of the general course of the trial, we think that it was the purpose of the judge to submit to the jury the questions whether there was any express acceptance or any express rejection of the battery; and that upon these questions they were not to take into consideration the legal effect of a subsequent use; that the jury so understood it, and that their findings are to be interpreted accordingly. So interpreted, the findings must be taken to mean that there never was any express acceptance, but there was a seasonable, express rejection, followed by a use of the battery for several months; and, as thus read, they are not inconsistent with each other. It is apparent that this is the view which the presiding judge took of them.

The case then is this. The battery was not in accordance with the contract, and the plaintiffs seasonably rejected it. But after that they kept it and used it continuously for several months, for their own profit, in the very work for which they bought it. Is this subsequent use fatal to their right to rely upon their rejection and to recover back what they had paid of the purchase price? The judge ruled that it was, and we are of opinion that the ruling was correct.

The battery was constructed and delivered to the plaintiffs by the defendant in professed compliance with the contract, and both parties so understood. When the plaintiffs discovered that the battery was not in accordance with the contract, three remedies were open to them. The first was to reject and give notice of their decision to the defendant. This they seasonably did, and, if they had adhered to their rejection, they could have recovered back what they had paid. If upon such notice the defendant did not remove the battery, then the plaintiffs might have removed and stored it subject to the risk of the defendant, or held the defendant for storage if not removed. The second remedy was to accept the machinery and bring an action on the contract for damages. The third remedy was, whenever they should be sued for the balance of the purchase money, to set up a counterclaim for damages for breach of contract. They began with the first and rejected the battery. When they rejected it they became subject to the general rule that he who seeks to reject an article as not in accordance with the contract must, after he discovers its true condition, do nothing inconsistent with the vendor's ownership of the property. See *Brown* v. *Foster*, 108 N. Y. 387, 390. If the plaintiffs simply had allowed the battery to remain in their possession subject to the defendant's order, they nevertheless could have relied upon their rejection. But they did more. For several months after rejecting it they used it for their own profit and convenience in the work for which it was constructed and delivered to them under the contract. As between the parties to the contract such a use is not to be regarded as tortious but only as founded upon rights given by the contract. It is utterly inconsistent with a purpose to resort to the remedy of rejection, and is consistent only with a claim to title and ownership; and consequently it must be held as an

abandonment of the right of rejection.    The verdict for the defendant therefore was properly directed.    For cases illustrating the principle here applied, see *Brown* v. *Foster*, 108 N. Y. 387, 390; *Underwood* v. *Wolf*, 131 Ill. 425; *Dodsworth* v. *Hercules Iron Works*, 13 C. C. A. 552; *Pennsylvania Iron Works Co.* v. *Hygeian Ice & Cold Storage Co.* 185 Mass. 366.

It follows from the terms of the reservation that the verdict is to stand "if there was no error in the admission or exclusion of evidence against the exception of the plaintiffs."    The only exception taken by the plaintiffs as to rulings upon the admissibility of evidence was to the exclusion of the offer to prove that the battery furnished by the defendant was an infringement of a patent held by another corporation.    Even if there was an implied warranty of the right to use the battery as well as of title, (see *Bigler* v. *Electro-Dynamic Co.* 56 Fed. Rep. 304; 21 C. C. A. 12,) still the evidence would have been material only on the question of damages for breach of the contract; and in view of the fact that the case finally was submitted to the jury on the fourth count, which did not sound in damages, and of the findings of the jury, it does not appear that any material error was committed in its exclusion.

It becomes unnecessary to consider the exceptions of the defendant.    In accordance with the terms of the report, the order must be

*Verdict for the defendant to stand.*