## FRED H. STURGIS et al., Respondents, v. GEORGE C. WHISLER, Appellant.

### Kansas City Court of Appeals, June 28, 1910.

1. **SALE: Rescission: Warranty.** In order that a vendee may rescind a contract of sale for breach of warranty, he must return or tender the property promptly upon discovering the breach.

2. ———: ———: **Tender: Petition.** The tender is a prerequisite of the right to bring the action on the rescission for the purchase money, and a tender made only by the petition is not sufficient.

3. ———: ———: ———. A mere refusal by the vendor to comply with his contract for the sale of a horse, when applied to by the vendee, the horse being at the vendee's farm, several miles away, will not dispense with a tender.

4. ——: ——: ——: **Use of Property.** If a vendor sells a stallion with written warranty that he is a good breeder and that if he fails he may be returned within one year—it was held that if the vendee discovers that he has failed the first year and offers to return him, and yet uses him for service to mares the second season, his right to rescind no longer exists; notwithstanding he brought his action before the second season.

5. ——: ——: **Contract.** Where a stallion is sold for breeding purposes with a guarantee that he is a good breeder and will get 60 per cent of mares with foal, and the vendee has a year in which to return him if he fails; the time is for the purpose of discovering if he fails the guaranty, and if the vendee ascertains that he does not, before the expiration of the year, it is his duty to promptly notify the vendor and tender the horse back.

6. ——: ——: ——: ——. W. sold a stallion to S. and warranted him in writing to be a good breeder and that he would, with certain treatment, get sixty per cent of mares with foal, and that if the warranty failed, he could be returned within a year. In a few days after his purchase, S. sold the horse to T, and when the year was nearly expired, assigned the written warranty to him. In a few days after T purchased, he became aware that the horse was not as warranted. He did not offer to return him to S, and demanded a rescission, and it was held he had no right to do so, since, at that time, there was no contractual relation between him and W. It was also held that S had no right to demand a rescission, since he had sold the horse and could not return him.

Appeal from Caldwell Circuit Court.—*Hon. Francis H. Trimble,* Judge.

REVERSED.

*Chapman & Hanger* for appellant.

(1) Contracts, involving the relation of personal confidence, and such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided, are not transferable. Pritts v. McMurray, 74 Mo. App. 495; Implement Co. v. Iron Works, 129 Mo. 222; Kernochan v. Murray, 111 N. Y. 306.

(2)   Where an executory contract is founded upon trust and confidence reposed in the character and skill of a particular person, it is not assignable without the consent and concurrence of both parties. Lansden v. McCarthy, 45 Mo. 106; Boykin v. Campbell, 9 Mo. App. 495; Redheffer v. Leather, 15 Mo. App. 12; Ice Co. v. Patter, 123 Mass. 28.   (3)   The contract sued on was not assignable without the assent of both parties thereto, for the reason that it was one of mutual confidence. Moore v. Thompson, 93 Mo. App. 336.   (4)   The rule is that a party, desiring to rescind a contract, must return or tender back the property received and place the other contracting party in statu quo, otherwise the contract will not be rescinded.   There was no offer to return or rescind prior to suit in this case.   In plaintiff Thompson's testimony he said:   "When I had my conversation with Mr. Whisler up at Hamilton I did not offer to turn the horse back."   This was the only conversation he had with the defendant prior to the suit. Phares v. Lumber Co., 18 Mo. App. 546; Girard v. Car. Co., 123 Mo. 387; Zuck v. Carriage Co., 106 Mo. App. 566; Donovan v. McDermatt, 108 Mo. App. 538; Jarrett v. Morton, 44 Mo. 275.   (5)   A right to rescind must be exercised at the earliest practicable moment after the discovery of the ground therefor. Pence v. Langson, 99 U. S. 578; Estes v. Reynolds, 75 Mo. 563; Hall v. Fulleston, 69 Ill. 448; St. John v. Hendrickson, 81 Ind. 350; Foster v. Rowley, 110 Mich. 63.   (6)   Vendee must not only tender a return of the property, but the tender must be a continuing one, and he must stand ready to comply with it at any time; if he afterwards loses the property his conduct in so doing amounts to an acceptance which will bar his right to a rescission.   Remedies for Breach of Warranty, 30 Am. Eng. Cyc. (2 Ed.), p. 195; McCullough v. Scott, 13 B. Mon. 172; Bigelow on Frauds, p. 425; Kerr v. Emerson, 64 Mo. App. 160. (7)   Suit can be maintained on a warranty only by the party to whom warranty is made.   Talley v. Beever,

78 S. W. (Tex.) 23; Tyler v. Moody (Ky.), 54 L. R. A. 417; Zuckerman v. Solomon, 73 Ill. 131. (8) A delay of six weeks after the discovery of the breach of warranty is unreasonable and amounts to an acceptance of the goods. Rosenfield v. Swenson (Minn.), 47 N. W. 718. (9) Where a breach of warranty occurs in the sale of a chattel and the purchase money has been paid, vendee may retain the property and sue for the breach, or he may, on returning the property promptly after notice of the breach, rescind the contract and sue for the breach. Heating Co. v. Seigel, 60 Mo. App. 148; Branson v. Tuner, 77 Mo. 489. (10) It seems no one can be made a party to an action to rescind either as plaintiff or defendant except the buyer and the seller and where the property has been sold the remedy of the second purchaser, if any, is against his immediate seller and not against the original seller. 28 Am. and Eng. Cyc. Law (1 Ed.), p. 817-24. (11) Thompson got no interest in any cause of action on the contract of warranty accruing to Sturgis because no cause of action existed in Sturgis' favor at the time he made the assignment, as he had no power to put the defendant in statu quo and never could. No breach of warranty action for rescission of contract could be assigned. He could have no such cause of action, hence he could not and did not assign any. Mullinox v. Lowry, 124 S. W. 572; Harrison v. Craven, 188 Mo. 590.

*Crosby Johnson, C. C. Johnson* and *Wm. M. Fitch* for respondents.

(1) The contract not being for the personal services of Sturgis, he had a right to assign the contract without the knowledge or consent of defendant. Leahy v. Dugdale, 27 Mo. 437; State ex rel. v. Clements, 42 Mo. 69; Love v. Van Every, 18 Mo. App. 196; Sunday Mirror Co. v. Galvin, 55 Mo. App. 412; Paving Co. v. Prather's Admr., 58 Mo. App. 487; Delvin v. Mayor,

63 N. Y. 8; Munsel v. Lewis, 2 Den. (N. Y.) 224; Gaston v. Plummer, 14 Conn. 343; Galey v. Melon, 172 Pa. St. 443; Seers v. Conover, 33 How. Prac. 324; Snyder v. Railroad, 86 Mo. 613. (2) Defendant consented to the sale of the stallion and to the transfer of the warranty thereon, and he cannot complain of its being transferred now. Afflick v. Streeter, 125 Mo. App. 703; Hall v. Chitwood, 106 Mo. App. 568. (3) If an action will survive to the executors or administrators of a man, the action is assignable. Bank v. Com. Co., 61 Mo. App. 144; Alexander v. Railroad, 54 Mo. App. 66; Chiles v. Railroad, 117 N. W. 414; Life Ins. Co. v. Smith, 117 Mo. 261; Pomeroy's Remedies, secs. 146, 147 and 150; Chouteau v. Broughton, 100 Mo. 406. (4) Defendant having refused to arbitrate and also having refused to have anything to do with the horse or to receive the horse, makes actual tender of the horse unnecessary. Where one announces in advance that he will not accept, a tender is unnecessary. Harwood v Diemer, 41 Mo. App. 48; Austin v. St. Louis Transit Co., 115 Mo. App. 146; 28 Am. and Eng. Ency. Law (2 Ed.), p. 7; Walls v. Gates, 4 Mo. App. 1; Schilbason v. Pendleton, 76 Mo. App. 454; McDonald v. Wolf, 40 Mo. App. 302; Stephenson v. Kilpatrick, 166 Mo. 262; Johnson v. Garlichs, 63 Mo. App. 578. (5) The contract provides that the horse may be returned March 1, 1908. There was a reason for this; by the nature of things, it took time to test the ability of the horse to get foals. The contract was a law unto the parties. Skeen v. Thresher Co., 34 Mo. App. 485; Beatie v. Coal Co., 56 Mo. App. 221. (6) The contract of sale in this case contained a warranty, with privilege of return if the horse did not comply with the warranty. The case was properly brought to compel defendant to receive the horse. Bomberger v. Hennessy, 18 Ia. 477; Bayliss v. Hennessy, 54 Ia. 11. Damages caused by a breach of warranty are assignable. Felt v. Reynolds Fruit Co., 52 Mich. 602, 18 N. W. 378. (7) Mere delay in seek-

ing to enforce the right to rescind may be so explained as to show that it was not an acquiescence. 24 Am. and Eng. Law (2 Ed.), 626; 29 Am. and Eng. Ency. Law (2 Ed.), 1105. (8) Offer to restore property is sufficient if contained in the petition. 24 Am. and Eng. Ency. Law (2 Ed.) 621; Whelen v. Reiley, 61 Mo. 565; Paquin v. Milliken, 163 Mo. 79. (9) Fair and reasonable or substantial compliance with conditions precedent is all that is required. Osborn Co. v. Henry, 70 Mo. App. 23; Berry v. Mowing and Reaping Co., 62 Mo. App. 41; Nichols v. Shepard, 79 Mo. 264; Kingman Co. v. Schulenberger, 64 Mo. App. 554; Nichols, Shepard Co. v. Rhoadman, 112 Mo. App. 308; Harvester Co. v. Mackey, 100 Mo. App. 405; 30 Am. and Eng. Ency. Law (2 Ed.), 206.

ELLISON, J.—Plaintiffs alleged an attempt to rescind a written contract of sale of a stallion by offering to return the horse, and demanding the purchase price, stating that such offer and demand were refused. They thereupon brought this action for the purchase price, the petition containing an offer to return.

It appears that defendant sold the stallion for breeding purposes at a public auction to plaintiff Sturgis, and that certain representations of warranty were made by the auctioneer which afterwards, when the purchase price was paid, were reduced to writing, to the effect following: That the horse would get sixty per cent of mares with foal with proper care, treatment and certain exercise; and that if he failed to fulfill the warranty defendant would take him back and return purchase money.

It is claimed that the stallion failed to meet the requirements of the contract and that he was a great part of the time unable to copulate with mares and that when he did, he failed in getting more than twenty per cent of them with foal, being forty per cent less than was agreed upon in the contract.

A few days after the sale and written contract, Sturgis sold the stallion to his co-plaintiff, Thompson, and about ten months afterwards assigned to him one-half interest in the contract with defendant.

There were several questions presented at the argument; among them, whether the contract was personal with Sturgis and non-assignable by him; and whether a joint cause of action could result to Sturgis and Thompson.

But we think the evidence conclusively fails to establish a proposition which, in this State, is the foundation of the right of rescission. That is, a tender of the property back to the seller, promptly on discovering the defect which is relied upon for rescission. [Robinson v. Siple, 129 Mo. 208; Taylor v. Short, 107 Mo. 384; Estes v. Reynolds, 75 Mo. 563; Kirk & Co. v. Seeley, 63 Mo. App. 262; Walls v. Gates, 6 Mo. App. 242.]

The evidence not only fails to show a tender of the stallion to defendant by plaintiffs, or either of them, but it affirmatively shows that no tender was made. It does appear that in October, after the sale, in a conversation between plaintiff Sturgis and defendant, he told defendant that plaintiff Thompson wanted him to take the horse back. Within a day or two they met again and Sturgis again said that Thompson was dissatisfied and wanted to turn the horse back. Defendant insisted that the horse was "all right"; that he had no connection with Thompson, and that he, Sturgis, had better settle with Thompson as he had nothing to do with him. When these conversations occurred the horse was not at hand, was not in several miles of where the parties were.

There are several insurmountable objections to the foregoing constituting a tender. In the first place, as there was no actual tender, we must look to see if there was anything which excused it. We cannot find that there was. The most the evidence shows is that plaintiffs were dissatisfied with the horse and wanted defendant to take him back, asked him to do so. But it will be ob-

served that defendant stated that the horse had not been treated right and that may have been one of the reasons for refusing to accept the proposition to take him back. If he had been produced and tendered, it might have been that defendant would have seen that his fears were not well grounded and have consented to his return. We do not think a mere dispute between seller and purchaser as to the failure of the commodity sold to come up to the contract of sale, is sufficient to excuse a tender.

Another objection is that at the time plaintiff Sturgis asked defendant to take the horse back, he did not own him and had no control over him and it was not within his power to produce him, if defendant had requested him to do so. He had sold the horse several months prior to this plaintiff Thompson. There is no evidence that the latter had made Sturgis his agent to make a tender.

Again, Thompson, who owned the horse and had, of course, full control over him, never asked defendant to take him back. He so stated in his testimony. And necessarily he could not have done so, since, at that time, there was no contractual relationship existing between him and defendant. It was not until several months afterward that Sturgis assigned to Thompson one-half interest in the contract between him and defendant.

The only tender in the case is that made by the petition. But that will not suffice, since until there is a tender there is no cause of action founded on a rescission, and, of course, a cause of action must exist before a right accrues to sue upon it. [Althoff v. Transit Co., 204 Mo. 166; Implement Co. v. Ellis, 125 Mo. App. 692; Cahn v. Reid, 18 Mo. App. 115, 123-126; Walls v. Gates, supra.]

There is yet another fatal objection to maintaining the action, and that is that plaintiff Thompson stood the horse for breeding purposes for hire for two seasons

after defendant refused to take him back. An offer to rescind and tender is a repudiation of right and title to the property by the purchaser. It is true the purchaser must not willfully allow the property to be destroyed if the seller refuses to accept it and it still remains in his possession. But he should not exercise dominion over it as owner. He becomes a mere bailee and cannot use it as his own. That idea runs through the cases decided in this State. It was expressly so ruled in McCulloch v. Scott, 52 Ky. 172, a case quite similar to this except that there a tender was actually made of a jack sold for breeding purposes, but on being refused by the vendor, the vendees "took the jack home after the refusal, and used him as their own, and put him to a number of mares, and did not merely take care of him, it seems to us that they waived or lost the benefit of their tender and made the jack their own, with the right only of suing for such damages as they may have sustained by the fraud if one was practiced upon them in the sale." The same ruling was made by the St. Louis Court of Appeals, in Faust v. Koers, 111 Mo. App. 560; and by the Supreme Court of Wisconsin, in Glass Co. v. Friedlander, 84 Wis. 53.

It is suggested that Thompson was justified in using the horse for breeding purposes in order to minimize damages. Undoubtedly instances could occur where it would be proper to protect the owner from unnecessary damage. But that is not this case, nor do the authorities cited by the plaintiffs sustain them. In the case of Faust v. Koers, supra, the vendee, who kept the horse after a tender had been refused, did not use him as his own. He occasionally took him out of the stable for exercise, merely as a means of preserving his health and strength. We have cited the case as supporting our conclusion that if the vendee uses the property as his own, he waives the tender and right to rescind.

But it was argued that the contract gave Sturgis or his assignee a certain period in which to exercise the

Sturgis v. Whisler.

right to rescind, *viz.,* until the 1st of March, 1908, and that before that time had expired this action was brought, and that neither he, nor Thompson, was required to offer to rescind before that time. We do not think that was intended to be the meaning of the contract. It was not meant that if it was discovered in the spring or early summer of 1907, the horse was incapacitated for copulation, that Sturgis could retain the right to rescind *on that account* until the following March. It is common knowledge that a stallion may be apparently perfect in connecting with mares and yet be barren, or if not barren, an uncertain foal getter. Though sometimes this can be known earlier, yet it cannot always be ascertained with certainty until the period, or near the period, of gestation has run. So undoubtedly, for that reason, Sturgis was given full time for a complete test of the horse's value. If he discovered he was wholly or partially worthless before that time, on account of impotency, or as an uncertain foal getter, it was his duty to exercise his right to rescind. This was his interpretation of the contract, for, as above shown, he did make his attempt to turn the horse back to defendant in the early summer of 1907.

The judgment is reversed. All concur.