BUTLER MANUFACTURING COMPANY, Appellee, v. ELLIOTT & COX, Appellant.

No. 40236.

December 9, 1930.

Rehearing Denied February 17, 1931.

*Helsell, McCall & Dolliver,* for appellant.

*Frank Maher* and *D. M. Kelleher,* for appellee.

MORLING, C. J.—I. Defendant's first contention is that its contracts were with the Glover Sales Company, an independent corporation, and not with Butler Manufacturing Company, the  plaintiff; that plaintiff is not the owner of the cause of action sued upon. The contracts, though, in the body of them, "Glover Sales Company" is named as the seller, bear the heading "Glover Sales Company Division of Butler Mfg. Co., Kansas City, Missouri." Plaintiff conducts its business through departments, one of which is conducted under the name "Glover Sales Company Division of Butler Mfg. Co., Kansas City, Missouri." It appears that the business now conducted through this department was originally the business of W. C. Glover, who transferred it to a corporation called "Glover Sales Company." W. C. Glover is now a director of plaintiff corporation, and manager of the business conducted through the department "Glover Sales Company." That business is now indisputably operated by plaintiff. The plaintiff is the party with whom the contracts in question were in fact made, and the name "Glover Sales Company," as it appears in the contracts, is the name under which the plaintiff was doing the business here involved. Defendant makes no claim that it intended to deal, or believed that it was dealing, with a party other than the Butler Manufacturing Company. A corporation, like an individual, may do business and contract in a name other than its legal name. 1 Thompson on Corporations (2d Ed.), Section 55. Undisputed evidence, not objected to, shows that the plaintiff was in fact the seller in the contracts in controversy, owner of the cause of action sued upon, and the warrantor in the warranties set up in the answer. The reception of additional evidence of the foregoing facts, over objection, though incompetent, was not prejudicial.

II. If, on the pleadings and evidence, including competent and relevant evidence offered by the appellant and rejected, the appellee was, as matter of law, entitled to recover the amount  awarded it by the verdict, errors in rulings on the admissibility of evidence and in instructions are without prejudice, and not ground for a new trial. *Dye Produce Co. v. Davis*, 202 Iowa 1008; *Blakely v. Cabelka*, 207 Iowa 959; *Mul-*

*roney Mfg. Co. v. Weeks,* 185 Iowa 714; *Brown v. Hunt & Shuetz Co.,* 163 Iowa 637.

At the time the case went to the jury, the defense was only to plaintiff's claim of recovery for part of the goods sued for, and was based upon the alleged severability of the contract and  rescission as to those goods, with consequent claim for damages incidental to alleged breach of warranty of those goods. We shall assume, for the purpose of the case, without so deciding, that the warranties were given to the full extent claimed by defendant in its rejected, as well as its accepted, offers of evidence, whether to that extent submitted to the jury or not. We shall assume, also, that there was sufficient evidence to enable the jury to find breach of such warranties.

For breach of warranty, defendant had an election of remedies. Defendant had the right to stand on the contract, retain the goods, and recover its damages resulting from the breach. Defendant had the alternative right to rescind the contract and set up rescission in defense to an action to recover for the price of the goods. *Lambertson v. National Inv. & Fin. Co.,* 200 Iowa 527.

Ordinarily, rescission must be of the whole contract, though there may be partial rescission in case of severable provisions. *White v. Miller,* 132 Iowa 144; *Inman Mfg. Co. v. American Cereal Co.,* 124 Iowa 737; *Pacific Timber Co. v. Iowa Windmill & P. Co.,* 135 Iowa 308; *Sturtevant Co. v. LeMars Gas Co.,* 188 Iowa 584; 13 Corpus Juris 623.

Whether the contract in suit was severable or entire, we find it unnecessary to determine. See *Inman Mfg. Co. v. American Cereal Co.,* 124 Iowa 737; *Owens Co. v. Leland Farmers Elev. Co.,* 198 Iowa 271; *White v. Miller,* 132 Iowa 144; *Pacific Timber Co. v. Iowa Windmill & P. Co.,* 135 Iowa 308; *Sturtevant Co. v. LeMars Gas Co.,* 188 Iowa 584.

Rescission is the unmaking of the contract. Rescission may be accomplished by acts *in pais,* as well as through resort to the court of equity; but, in order to accomplish rescission *in pais* for breach of warranty (as well as for other causes), there must be, within reasonable time after knowledge of the existence of the cause (in this case breach of warranty), an election to rescind. Within reasonable time, too, knowledge of such elec-

tion, from unmistakable act or notice manifesting it, must be conveyed to the seller (13 Corpus Juris 618), and the buyer must restore, or offer to restore, the *status quo*. Until restoration or offer to make restoration is made, there is ordinarily, at law, no rescission. *Stauffer v. Mathison Motor Co.*, 207 Iowa 1038; *Messenbrink v. Bliesman*, 204 Iowa 223; *Reiger v. Turley*, 151 Iowa 491; 13 Corpus Juris 620 *et seq.*; 35 Cyc. 146; *Olson v. Brison*, 129 Iowa 604; *Lambertson v. National Inv. & Fin. Co.*, 200 Iowa 527; *Owen v. Button*, 210 Mass. 219 (96 N. E. 333); *Haines v. Rowland*, 35 Idaho 481 (207 Pac. 428); *Bryant v. Isburgh*, 13 Gray (Mass.) 607 (74 Am. Dec. 655, 661, and note); *Chaffee v. Raymond*, 241 Mich. 392 (217 N. W. 22); 13 Corpus Juris 620, 621.

When the buyer rescinds, he renounces the contract and his ownership of the property obtained thereunder, and invests the seller with the ownership as if the contract had not been made. Continued exercise by the buyer of ownership or dominion of the property after notice of rescission and offer to return necessarily asserts ownership in the buyer, denies the ownership of the seller, and waives or withdraws the notice. *Advance-Rumely Thresher Co. v. Wharton*, 211 Iowa 264; *Owens Co. v. Leland Farmers Elev. Co.*, 198 Iowa 271, 275; *Frey-Sheckler Co. v. Iowa Brick Co.*, 104 Iowa 494, 498; *Smith v. Theiss & Son*, 196 Iowa 514, 521; *Van Dohren v. John Deere Plow Co.*, 71 Neb. 276 (98 N. W. 830); 24 Ruling Case Law 437; *Sturgis v. Whisler*, 145 Mo. App. 148 (130 S. W. 111); *Fred W. Wolf Co. v. Monarch Refrigerating Co.*, 252 Ill. 491 (96 N. E. 1063, 50 L. R. A. [N. S.] 808, 818); *Graham v. Hatch Storage Battery Co.*, 186 Mass. 226 (71 N. E. 532); *Stillwell, Bierce & Smith Vaile Co. v. Biloxi Canning Co.*, 78 Miss. 779 (29 So. 513); *Samples v. Guyer*, 120 Ala. 611 (24 So. 942); *McCulloch v. Scott*, 13 B. Mon. (Ky.) 172 (56 Am. Dec. 561); *Hakes v. Thayer*, 165 Mich. 476 (131 N. W. 174).

Continued use of the property after knowledge of breach of warranty further than necessary or proper to make a test as to quality waives the right to rescind and return. 24 Ruling Case Law 293.

The legal effect of acts asserting and continuing ownership and dominion of the goods and consequent affirmation of the

contract may not be overcome merely by testimony to a contrary intention. *Idem.*

We shall not discuss the question whether the alleged rescission was made within reasonable time, or whether, the goods having been sold F.O.B. Kansas City, the offer to return, which will be later set out, was in that respect sufficient. See 35 Cyc. 148.

Under date of August 22, 1927, two writings were executed by the parties to this suit, one of which bore the title ''Conditional Sales Contract,'' and the other, ''Installation Contract.'' They were the written evidence of a single transaction. By the terms of the ''Conditional Sales Contract,'' defendant purchases from plaintiff (under the name ''Glover Sales Company'') ''the following goods to be shipped, installed and used at: 214 1st Ave., So., Town Fort Dodge, State Ia. Quantity 1 Number 7 Model G. Equipment Clarifier Complete, $2600.00. 1 #4 Pump extra $75.00, 2 #2 Traps extra $60.00, 1 #1 Traps extra $25.00, 1 #3 deodorize 6'' Wide then standard $645.00, 1 36x42 Glover Washer—R. Headin $690.00, Total $4095.00. Allowance on 30x41 washer $250.00, Total $3845.00, and orders same shipped to address shown above. Via Freight R.R., for which the undersigned agrees to pay the sum of $3845.00 Thirty-eight hundred forty-five and 00-100 Dollars, F.O.B. Kansas City, Mo., on following terms: * * * and the Glover Sales Company guarantees and agrees to replace (F.O.B. Kansas City, Missouri,) any part defective due to defective material and workmanship, * * * The Glover Sales Company guarantees above equipment to be as represented in their literature.''

The ''installation'' contract provided for supervision of installation by one of plaintiff's engineers. Pursuant to these agreements, the equipment so purchased was installed, the installation being completed about February 9, 1928. Its operation was not satisfactory to defendant. The complaint was that the circulating cleansing fluid was not properly purified or clarified. Under date of March 6, 1928, another sale contract was entered into in the same form, whereby defendant purchased a Model H equipment clarifier for $900, less $600 for the H3 clarifier, leaving a difference of $300, and purchased also fire protection apparatus, particularly designated, at stated prices, the total purchase price being $931.50, the warranties being the

same as in the preceding contract. The fire protection apparatus was to be installed gratuitously. This equipment was installed under the supervision of plaintiff's engineers about April 1, 1928. The operation was still not satisfactory to defendant, though plaintiff's engineers were in frequent attendance, assisting and giving instruction. Under date of June 16, 1928, defendant's attorneys wrote plaintiff at length, setting out the respective contentions concerning the "filtering system" or "plant," and stating:

"If you insist that the plant is satisfactory as now installed and are unwilling to make any further tests, you may consider this letter the rescission on the part of Elliott & Cox of the contract, for your failure to install a plant as represented, and declination on the part of that company to proceed farther."

The proposal was to rescind "the contract." Plaintiff replied, setting out its contention, and offering to co-operate in demonstrating that the trouble was with the solvent used.

Defendant's evidence is that, during July, and subsequently, defendant replaced and used its old (DeLaval) purifying system, but did not remove the clarifier purchased from plaintiff until about December 1, 1928. On December 8, 1928, defendant's attorneys wrote plaintiff:

"The Elliott & Cox French Dry Cleaning Company has removed the tanks and other equipment in the purifying system installed by you and for reasons heretofore outlined holds these subject to your order for disposition."

No notice of rescission other than the two letters of June 16th and December 8th is made to appear.

Plaintiff's petition claimed recovery on both contracts for the price of all the goods sold thereunder and for services of engineer in making installation. Defendant, in answer and in amendment, and in amended and substituted answer, alleged its election to rescind the contract for breach of warranty, and tendered "back to plaintiff such equipment." The prayer of the answer was for dismissal of the petition and for judgment against plaintiff on counterclaim. Defendant's allegation made during trial was that it offered in June, 1928, and again in December, 1928, "to return all of said equipment, or to return

the purifying system only, and retain the other equipment not a part of said system, and defendant now renews said offers.'' This allegation is not supported by any evidence. After the evidence was in, defendant filed another amended and substituted answer and counterclaim ''to conform to the proof,'' wherein it admitted the contracts and alleged failure of ''said system'' to operate as guaranteed, and for the first time alleged that the contract was severable, and admitted its indebtedness for the property sold other than the clarifier complete.

Up to the time of the conclusion of the evidence, defendant was standing, not upon partial rescission, but upon total rescission and total denial of liability. By its last amended and substituted answer, upon which it went to the jury, defendant acknowledged liability for part of the goods included in two contracts which it claimed it had rescinded. Thereby plaintiff admitted, in accordance with the evidence, that it owned those goods. The invoice made by plaintiff to defendant September 21, 1927, shows that:

''One Model G. No. 7 Glover Continuous Flow purifying system consists:

''1—Clarifier, 1 Purifier, 1—No. 4 Filter

1—2 in. Sight Glass Complete, 3—1½ in. Sight Glass Comp.

1—No. 3 Mixing Tank, 1—No. 3 Expansion Tank

3—No. 4 Pump

1—No. 2 Master Trap, 1—No.. 2 Super Heater complete

1—2 Valve 1½ in. Suction Header, 1—6 Valve 1½ in. Suction Header

1—4 Valve 1½ in. Discharge Header, 1—6 Valve 1½ in. Valves

1—600 Gal. Muck Tank,                    $2600.00''

It thus appears that sight glasses, pumps, traps, and valves are part of the ''clarifier complete.'' The evidence wholly fails to show that all such articles included in the ''clarifier complete'' as furnished were held ''subject to your [plaintiff's] order for disposition,''—much less that they had been taken out of, and were not being used in, defendant's hook-up. The only information that plaintiff had of any intention to rescind was, at most, an intention to rescind the entire contract. Admittedly,

total rescission was never accomplished, and plaintiff, therefore, never had any occasion to recognize such claimed rescission. The plaintiff was never informed that defendant was claiming to make a partial rescission, or offering to return to plaintiff the articles included in the "clarifier complete." Plaintiff had never had any knowledge of or opportunity to accept any such alleged partial rescission and payment for the balance. Defendant's allegation of rescission of the contract as to the clarifier complete and of the refusal to accept and of holding the same subject to the order of the plaintiff and its renewal of its alleged "offer to return said clarifier complete" is wholly unsustained by the proof. On the record as made, including defendant's offers of testimony, no defense to any of plaintiff's causes of action was shown. Plaintiff was entitled, as matter of law, to the verdict which was returned in its favor.

III. Errors, if any, in ruling on motions aimed at the reply to the first amended and substituted answer became immaterial when defendant filed a later amended and substituted  answer. This was filed ostensibly "to conform to the proof," and obviously the plaintiff had the right to reply to the issues thus raised, and therein to conform to the proof.

IV. Error is also assigned in not granting a new trial because of misconduct of the jury. This also becomes immaterial in view of the plaintiff's right, as a matter of law, to the verdict which was rendered. Furthermore, it appears  that the motion was based upon affidavits of jurors. The affiants were cross-examined, and the testimony of other jurors was taken, but such testimony is not before us. The conclusions of the trial court upon this testimony cannot, therefore, be reviewed here.

More than 200 errors are assigned. They are all ruled by the foregoing discussion.—*Affirmed.*

EVANS, KINDIG, WAGNER, and GRIMM, JJ., concur.