Robert O. DEMING, Jr.,

v.

BUCKLEY'S ART GALLERY.

Civ. A. No. 853.

United States District Court
W. D. Arkansas,
Hot Springs Division.

Aug. 15, 1961.

Griffin Smith, Little Rock, Ark., for plaintiff.

Richard W. Hobbs, Hot Springs, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

On June 27, 1961, plaintiff filed his complaint, in which he alleged that he is a citizen of Kansas and the defendant is a corporation organized under Arkansas law, with its principal place of business in Hot Springs, and that the amount in controversy exceeded $10,000, exclusive of interest and costs.

Plaintiff further alleged:

"2. On April 6, 1961, plaintiff was in defendant's place of business at Hot Springs and indicated an interest in purchasing a diamond ring. Such ring was represented as being a pure white stone and defendant's employee agreed that it would be auctioned on Saturday night, April 8, at which time plaintiff could bid. Plaintiff appeared for the auction and prior to beginning the auction L. Morse, acting on behalf of defendant, announced that the stone was a 4.20 carat white diamond; that it was a choice stone; and that it was the property of an estate in Reading, Pa.; that sale was expressly conditioned on the stone being worth the price paid; that the successful bidder was privileged to submit it to any competent jewelry appraiser and if the stone was not appraised at the value fixed by the price paid it could be returned and full refund would be given.

"3. Plaintiff, relying on such representations, and on the condition of repurchase if appraisal showed less value than the price, purchased the ring for $6554.

"4. The representations were false, defendant's employees were aware of such falsity, and were part of a plan to deceive and defraud plaintiff, in the following particulars: (a) the stone was not white, but dark yellow. It was not choice, but was poor brilliancy. It was not in good condition, but was scratched. (b) The stone was of materially less value than represented. (c) The condition of the sale; i. e., that appraisal by a competent jeweler would confirm value, with right of return, was breached by defendant. (d) The sale was in violation of Ark. Stat.Ann. Sec. 71–418 in that no statement setting out the color of the diamond was furnished plaintiff. Instead, defendant delivered to plaintiff a document styled 'Diamond Guarantee Bond', reproduction of which is attached, which is not a bond but a document designed to mislead purchasers, merely setting

forth an incomplete and false description of the article, failing to include the color of the stone or the weight of the two smaller stones.

"5. Plaintiff alleges that the entire transaction, as herein described, is part of a plan to deceive and defraud and that defendant perpetrated such fraud on plaintiff by use of knowingly false statements and conditions made for the purpose of being relied on by plaintiff and relied on by him to his damage.

"6. *Upon discovering breach of the condition and the nature of the fraud, plaintiff attached the ring to a draft on defendant, notified defendant of his intention to rescind, and the draft was presented to defendant but not accepted. Plaintiff has repeatedly offered to return the ring for a refund of the price, but defendant has refused.* [Emphasis added.]

"Wherefore, plaintiff prays that the transaction be rescinded; that he recover the sum of $6554 as damages, upon return of the ring, and the sum of $5000 as punitive damages, for costs and all proper relief."

Simultaneously with the filing of the complaint, the plaintiff's attorney, Mr. Griffin Smith, submitted to the court a memorandum, in which he stated:

"Since jurisdiction is dependent on a right to punitive damages, plaintiff anticipates the authority for recovery of such element should be demonstrated at the time the complaint is being filed. Arkansas authority is represented by Cummings v. Lord's Art Galleries, 302 S.W.2[d] 792, 227 Ark. 972. The transactions were, for practical purposes, identical, and punitive damages were sought and awarded in the sum of $2000. While the judgment was reversed on other grounds, the right to exemplary damages was apparently not questioned. This type activity is classed as 'gross fraud', and falls within the rule allowing recovery of punitive damages as a result. Am.Jur., Vol. 15, p. 715, n. 20.

"The remaining aspects of the action are contained in Pasternack v. Esskay Art Galleries, Inc. [D.C.] 90 F.S[upp.] 849, which issued from this court and will not be reiterated."

On July 6, 1961, defendant answered, denying specifically that the plaintiff was a citizen of Kansas and that the amount in controversy exceeded $10,000, and further denied each and every material allegation contained in the complaint. On the same date defendant filed a motion to strike an alleged appraisal of the ring in question, having been attached as "Exhibit A" to the complaint, contending that such allegation was a violation of the hearsay evidence rule. The court sustained the motion.

In a letter to the attorneys, dated July 10, 1961, advising them of the action on the defendant's motion, the court raised the question of jurisdiction, and in the last two paragraphs of the letter stated:

"The plaintiff further alleges that the entire transaction 'is part of a plan to deceive and defraud and that defendant perpetrated such fraud on plaintiff by use of knowingly false statements and conditions made for the purpose of being relied on by plaintiff and relied on by him to his damage,' and therefore he is seeking to recover the sum of $5,000.00 as punitive damages, which sum, together with the sum of $6,554.00, affords the jurisdictional amount.

"When the complaint was filed, Mr. Smith [the attorney for plaintiff], forwarded to me a memorandum in support of the jurisdiction, but at this time I have not had an opportunity to consider the jurisdictional question. However, I shall do so as soon as the business of the court permits, and in the meantime I suggest that if either of you desires to file any additional brief on

the jurisdictional question, that you send same to me as soon as you may reasonably do so."

On July 20, 1961, the attorney for the defendant responded by letter, acknowledging receipt of the court's letter of July 10, and stated:

"This is to advise you that I will raise no question or object to the jurisdiction of the court with respect to the amount of damages. I have researched this question on a minor degree and am satisfied that the claimed punitive damages can be tacked onto the actual damages in order to arrive at the jurisdictional amount."

On the following day, July 21, the court replied to the letter of the defendant's attorney and stated:

"I am in doubt as to whether the court does have jurisdiction and it is my duty to determine the question, which I shall do in due time, and if I conclude that the court does not have jurisdiction I shall enter an order dismissing the case for lack of jurisdiction.

"The complaint is nothing more than a suit for damages because of an alleged breach of contract of sale, and I am of the tentative opinion that punitive damages cannot be added to the amount sought to be recovered for a breach of contract.

"I am sending a copy of this letter to Mr. Smith in order that he may know that I am compelled to give consideration to the question of jurisdiction so that if either of you desires to file a brief on the question I shall be glad to have it."

On July 24, Mr. Smith, the attorney for the plaintiff, acknowledged receipt of the court's letter of July 21, and stated:

"I note that the court has characterized the action as one for breach of contract. While sales transactions are annoyingly overlapping as to character we submit that the allegation of the complaint makes the action sound in tort. It is alleged that there was 'a plan to deceive and defraud.'

"For jurisdictional purposes, of course, the face of the complaint affords the test not the ultimate result. Inclusion of exemplary damages in order to reach the necessary amount is recognized and approved, if in fact exemplary damages are legally recoverable. Bell v. Preferred Life Assur. Soc. of Montgomery, Ala., 64 S.Ct. 5, 320 U.S. 238, 88 L.Ed. 15.

"Aside from the Arkansas authority already cited, recoverability of exemplary damages in actions for deceit is thoroughly explored in the Eighth Circuit case of Greene v. Keithley, 86 F(2) 238, which states: 'Exemplary damages in tort actions based on deceit are allowed in many jurisdictions and reputable textwriters approve and state that such is favored by the weight of authority.' "

█ It is generally accepted that it is the duty of the court to inquire into its own jurisdiction, and upon its own motion the court should dismiss the suit whenever its lack of jurisdiction appears. 2 Cyc. of Fed. Practice, 3d Ed., Sec. 2.461.

In Reynolds v. Reynolds, D.C.W.D.Ark. 1940, 65 F.Supp. 916, on page 919, this court said:

" * * * There is no principle more firmly established than that parties may never create jurisdiction in a federal court by waiver or consent. Miller v. First Service Corporation, 8 Cir., 84 F.2d 680, 683, 109 A.L.R. 1179. At any and all stages of the proceedings it is the duty of the federal courts to determine the existence of the elements which are essential prerequisites to invoking their limited jurisdiction. 28 U.S.C.A. § 80; McNutt et al. v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Miller v. First Service Corporation, supra."

In Scroggin Farms Corporation v. Mc-Fadden, 8 Cir., 1948, 165 F.2d 10, at page 15, the court stated:

"* * * But on * * * appeal appellant has suggested that the jurisdiction of the federal court should be determined. It has not argued against the jurisdiction in its brief, stating merely that 'the question is not free from doubt', but it is recognized that the jurisdiction of a federal court in any case must appear affirmatively and cannot be conferred by consent, and the question of its existence must be noticed by the court at any stage of the case."

Furthermore, where the jurisdictional element was the amount in controversy, the court in Vance v. W. A. Vandercook Co., 1898, 170 U.S. 468, at page 472, 18 S.Ct. 645, at page 647, 42 L.Ed. 1111, stated:

"In determining from the face of a pleading whether the amount really in dispute is sufficient to confer jurisdiction upon a court of the United States, it is settled that if, from the nature of the case as stated in the pleadings, there could not legally be a judgment for an amount necessary to the jurisdiction, jurisdiction cannot attach, even though the damages be laid in the declaration at a larger sum. Barry v. Edmunds, 116 U.S. 550, 560 [6 S.Ct. 501, 29 L.Ed. 729]; Wilson v. Daniel, 3 Dall. 401, 407 [1 L.Ed. 655]."

In McNutt v. General Motors Acceptance Corp., 298 U.S. 178, at page 186, 56 S.Ct. 780, at page 784, 80 L.Ed. 1135, the court stated:

"'Indeed, * * * it is the duty of the court when it shall appear to its satisfaction that the suit does not really and substantially involve the necessary amount to give it jurisdiction, to dismiss the same, and this the court may do whether the parties raise the question or not. In the present case the issue was raised by answer, and, therefore, it became necessary for the court to determine the question of jurisdiction upon the facts presented, and when brought directly here, it is the duty of this Court to review the decision upon the testimony as one presenting a jurisdictional question.'"

In Calhoun v. Kentucky-West Virginia Gas Co., 6 Cir., 1948, 166 F.2d 530, at page 531, the court stated:

"Jurisdiction as distinguished from merits is wanting where the claim set forth in the pleading is plainly unsubstantial, either because obviously without merit or because its unsoundness results so clearly from court decisions as to leave no room for the inference that the questions sought to be raised can be the subject of controversy. Levering & Garrigues Co. v. Morrin, supra [289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062]."

Questions for determination are (1) does the cause of action sound in tort or is it an action ex contractu for the recovery of the purchase price? and (2) if the latter, may exemplary damages be pleaded and recovered as a proper element of damages?

■ In his complaint the plaintiff claims that he was induced to bid on the diamond ring in question, it having been represented as being a pure white stone. Furthermore, in the course of the bidding an agent of the defendant announced that the stone weighed 4.20 carats, that it was a choice stone, and that the sale was expressly conditioned on the stone's being worth the price paid, and that if the stone was not appraised at the value fixed by the price paid, it could be returned and full refund would be given. That he relied on such representations and purchased the ring for $6,554; that the representations were false, defendant's employees were aware of such falsity, and were part of a plan to deceive and defraud plaintiff; and that the entire transaction was part of a plan to deceive and defraud that the defendant perpetrated on plaintiff by use of knowingly false statements and conditions

made for the purpose of being relied on by plaintiff to his damage. He further alleged that he notified defendant of his intention to rescind upon discovering breach of the condition and the nature of the fraud by attaching the ring to a draft on defendant, such draft being presented to defendant but not accepted; that he has repeatedly offered to return the ring for a refund of the price but defendant has refused the subsequent offers, and that he is entitled to have the transaction rescinded and to recover the amount of the purchase price and punitive damages in the sum of $5,000 because of the willful misrepresentations.

From this it is clearly evident that the cause set out in its entirety is for the recovery of the purchase price because of the breach of the contract of sale and purchase, and not, as claimed by the plaintiff, an action in tort.

The allegation that the agents of the defendant conspired to sell the diamond ring by misrepresentations does not make the suit one to recover for conspiracy, but, if anything, is a fact to be considered in determining whether plaintiff was induced to enter into the contract by the alleged fraudulent statements and is, therefore, entitled to a rescission of the contract.

In characterizing a complaint setting forth almost identical facts as the one in the instant case, the court in Young v. Main, 8 Cir., 1934, 72 F.2d 640, 642, beginning at page 642, reasoned as follows:

"But there is even a stronger reason why we cannot consider the cause of action as pleaded to be an action on the case. This court has determined that, where a contract is obtained by fraud, the person defrauded has two remedies, and, as they are inconsistent, he must elect which one of the remedies sought he shall pursue. He may in effect affirm the contract and sue the party who defrauded him for his damages, or he may repudiate the contract and recover the purchase price paid. As these rights are inconsistent, he can-

not do both. Issenhuth v. Kirkpatrick (C.C.A.) 258 F. 293; Cheney v. Dickinson (C.C.A.) 172 F. 109, 111, 28 L.R.A. (N.S.) 359; Wilson v. New U. S. Cattle-Ranch Co. (C.C.A.) 73 F. 994. A fortiori, if an injured person pleads the rescission, he certainly cannot then say that his action is one in tort, as the manifest inconsistency of his position is too apparent.

\* \* \* \* \* \*

"We are clear that the cause of action is not to recover damages for fraudulent representations, but is an action to recover the amount of the purchase price upon an implied contract to return money obtained by fraud.

"The measure of recovery for a plaintiff who has rescinded his contract on the ground that the contract is voidable because having been obtained by fraud is the return of the money paid or a recovery of the property with which he parted. By rescinding a contract obtained by fraud, the plaintiff demands that the parties be placed in status quo and gives him the right to have the money or property with which he parted restored to him. Wilson v. New U. S. Cattle-Ranch Co., supra; Hayes v. Nashville (C.C.A.) 80 F. 641; Cheney v. Dickinson, supra; Issenhuth v. Kirkpatrick, supra; Champ Spring Co. v. United States (C.C.A.) 47 F.(2d) 1; Boatmen's Nat. Co. v. M. W. Elkins & Co. (C.C.A.) 63 F.(2d) 214; Reiger v. Turley, 151 Iowa 491, 501, 131 N.W. 866; Peterson v. McManus, 187 Iowa 522, 550, 172 N.W. 460; Butler Mfg. Co. v. Elliott & Cox, 211 Iowa 1068, 233 N.W. 669.

"As Judge Taft stated in the case of Hayes v. City of Nashville (C.C.A.) 80 F. 641, 645: 'It is well settled that a technical rescission of the contract has the legal effect of entitling each of the parties to be restored to the condition in which he was before the contract was made,

so far as that is possible, and that no rights accrue to either by force of the terms of the contract.'"

The above case has been cited with approval in the following cases: Merchants' Bank v. Hanna, 8 Cir., 1934, 73 F.2d 818; Fulbright v. United States, 8 Cir., 1937, 91 F.2d 210; Minick v. Associates Inv. Co., 1940, 71 App.D.C. 367, 110 F.2d 267; and Continental Carriers, Inc. v. Goodpasture, D.C.M.D.Ga.1959, 169 F.Supp. 602.

■ Having determined that the action is based upon a contract to recover money paid and received under the reasoning set out above, the remaining question before this court is whether exemplary damages may be recovered in such a suit. As a general rule, punitive damages are not recoverable in actions for breach of contracts, Restatement, Contracts, Sec. 342 (1932), and the same general rule would apply in an action for the recovery of the purchase price.

■ Since this is a diversity case, the substantive law of Arkansas controls in determining whether punitive damages are recoverable in a suit to rescind a contract of sale and purchase and for a recovery of the purchase price.

■ Although in Arkansas punitive damages may be awarded against one who commits a willful or malicious wrong, Sisco v. McNutt, 8 Cir., 1954, 209 F.2d 550, in an action ex contractu for goods sold and delivered, the plaintiff is not entitled to exemplary damages. O'Connell v. Rosso, 1892, 56 Ark. 603, 20 S.W. 531. In Snow v. Grace, 1869, 25 Ark. 570, at page 573, the court stated:

"Upon this claim or indebtedness of $2,500, the jury assessed the damages and returned a verdict for $10,000. This being an action of assumpsit for goods sold, an ordinary suit on a contract, where the claim is defined, and the damages recoverable upon it, readily computed, we are unable to ascertain, even by the utmost stretch of the imagination, on what grounds, or upon what principle, the jury could return such

an extensive verdict. They certainly could not, in this action, visit the defendant with exemplary or vindictive damages, and the plaintiff did not allege any cause for special damages in his declaration.

"In actions for wrongs in a proper case, and upon a sufficient showing, juries are authorized to inflict exemplary punitive damages, or what are commonly called damages by way of 'smart money'; but we are not aware that this principle extends to actions ex contractu. The judgment in this cause is for four times the amount of the claim, and we think is excessive and unwarranted."

The case of Southwestern Telegraph & Telephone Co. v. Memphis Telephone Co., 1914, 111 Ark. 474, 475, at page 481, 163 S.W. 1153, is in accord, the first syllabus of which reads as follows:

"1. Damages—Breach Of Contract—Punitive Damages.—Appellant, without knowledge of the contract, purchased the controlling interest in a company which had entered into a contract with appellee. Appellant thereafter refused to carry out the terms of the contract. Held, under the facts, appellee was not entitled to punitive damages."

Plaintiff has cited several cases to support his contention that punitive damages may be used to make up the jurisdictional amount in the instant case. He cited Cummings v. Lord's Art Galleries, 1957, 227 Ark. 972, 302 S.W.2d 792, which involved a similar transaction, and in which punitive damages were sought and awarded by jury verdict in the lower court. However, the trial court entered judgment for defendant notwithstanding the jury verdict, and the judgment was affirmed by the Arkansas Supreme Court on the basis that it involved an executory contract, whereas there is a completed contract in the instant case. The question of the right to recover punitive damages in an ex contractu action was not considered by the court. Plaintiff also cited Pasternack v. Esskay Art Gal-

leries, Inc., D.C.W.D.Ark.1950, 90 F. Supp. 849, which was an action on a contract similar to the one in the present case. However, in the Pasternack case there was not involved the question of punitive damages in order to attain the jurisdictional amount.

Plaintiff cited two more cases which raised the question of whether punitive or exemplary damages can be included in diversity cases in federal court in order to satisfy the jurisdictional amount necessary. The first case, Bell v. Preferred Life Assur. Society, 1943, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15, concerned an inducement to purchase a certificate of insurance through fraudulent misrepresentation by defendant's agent as to the value of the certificate. This case obviously sounded in tort since the court held that the complaint alleged "gross fraud," which the court defined as "willful misrepresentation," that is, done knowingly or recklessly. In holding this, the court allowed punitive damages to be recovered in order to make up the jurisdictional amount, since it was legal to do so under the applicable state law. However, in the cited case there was no warranty of value or guarantee of refund involved, as in the present case. Plaintiff also cited Greene v. Keithley, 8 Cir., 1936, 86 F.2d 238, in which there was alleged a conspiracy to defraud plaintiff in the purchase of certain oil lands. The court here characterized this as a tort action and allowed the allegation of exemplary damages in order to obtain the jurisdictional amount. However, this was a pre-Erie R. Co. v. Tompkins opinion, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and the court recognized the so-called "Federal General Law," which at that time allowed recovery of exemplary damages in a tort action in spite of the fact that the applicable state law in the case did not allow such recovery.

The court is of the opinion that the complaint sets up all the essentials necessary to support an action for rescission of the contract on the ground of fraud and that plaintiff, having elected to repu-diate or rescind the contract, cannot recover punitive damages in addition to the purchase price.

The allegation as to misrepresentation must be considered as pleaded therein as a basis for the claimed right of rescission. Where these misrepresentations were made willfully and maliciously are unimportant.

Therefore, in view of the characterization of this action as being ex contractu and the general rule of law, as accepted in Arkansas, that punitive damages cannot be recovered in an ex contractu action, an order is being entered today dismissing the cause of action for lack of jurisdiction. 28 U.S.C.A. § 1332(a), (Supp.1960).